# Weiss *et al. versus* The Mauch Chunk Iron Co., Wheeler *et al.*

1. The legal intendment of an agreement by one to sell and convey property to another for a certain price is that the vendee shall pay the price to the vendor.

2. A firm agreed to transfer all their effects, at an appraised valuation, to compose the capital stock of a manufacturing company when it should be formed, and to subscribe for its stock to the amount of the appraisement, the company agreeing to issue the stock therefor.   On failure by the company to issue the stock the vendors could not sue for the sum at which the effects were appraised, but might recover such *damages* as they had sustained.

3. Under an agreement to pay a certain sum of money in stock or other property, on refusal to pay in the property the creditor may demand the money and maintain debt.

4. Under an agreement to issue stock, or deliver other property in specie, on failure the only claim is for damages in an action of assumpsit or covenant, accordingly as the agreement is under seal or not.

5. Debt is founded on a contract, express or implied, in which the certainty of the sum or duty appears; the sum is to be recovered *in numero*, and not in damages.

6. When a special agreement has been so far performed that nothing remains but a mere duty to pay money, which it is for the plaintiff to show, a general count is all that is required.

7. A note payable in property to be admissible under the common counts must contain a promise to pay a sum certain either in money or property.

8. The 10th section of the Act 21st of March 1806, to regulate arbitrations, &c., is supplied and repealed by the Act of June 13th 1836—(Commencement of Actions).

9. Camp *v.* Bank of Owego, 10 Watts 130, and Loose *v.* Loose, 12 Casey 538, remarked on.

10. The question whether an action should be on debt or special assumpsit is no longer affected by the 10th section of the Act of March 1806.

11. The Act of March 27th 1854, as to liability of stockholders of manufacturing companies, for those things mentioned in it, contemplates a sale and delivery in the course of its usual business.

May 26th 1868, at Harrisburg.   Before Thompson, C. J., Strong, Read, Agnew and Sharswood, JJ.

Error to the Court of Common Pleas of *Carbon county:* to January Term 1868, No. 296.

This was an action of debt, $88,819.50 by Edward Weiss, Edward Lippincott and Elias Miner, lately trading as Weiss, Lippincott & Miner, to the use of the administrators of Peter Laubach, deceased, against the Mauch Chunk Iron Company, O. H. Wheeler and fourteen others, as stockholders of said company.   The suit was commenced, June 1st 1859, and was under section 5 of a supplement to the Manufacturing Act of 1849, passed March 27th 1854, (Pamph. L. 215, Purd. 694, pl. 32), which provides that the stockholders shall be jointly and severally liable in their individual capacity, only for debts due to miners, quarrymen and other laborers employed by such companies, and for

[Weiss *v.* Mauch Chunk Iron Co.]

machinery, provisions, merchandise, country produce and materials furnished for said companies respectively to be enforced, &c.

The first count of the declaration averred, that the Iron Company was a corporation under the Manufacturing Law of April 7th 1849, and was indebted on the 1st of April 1857 to the plaintiffs in $88,819.50, for "materials, machinery, merchandise and country produce," sold and delivered, and the other defendants were stockholders of the corporation, "by means whereof and by force of the act," the stockholder defendants became liable in their individual capacity for the said debt, and in consideration thereof agreed to pay, &c., and by reason of the said sum being unpaid, an action had accrued to the plaintiffs to demand and have from the defendants the *said sum*, &c.

The second count set out an indebtedness for "goods, wares, merchandise and chattels, machinery, provisions, country produce and materials;" otherwise as the first count.

The third count set out an indebtedness as in the second, alleged a liability by the company, only on a *quantum meruit;* and that plaintiffs deserved to have $88,000, wherefore an action had accrued, &c., to demand and have *said sum*, &c.

The fourth count set out an agreement on the 8th of April 1856 to sell and deliver "all the effects, goods, chattels, estates, messuages, tenements and premises of the plaintiffs," and the company agreed to pay such price as should be determined by John Balliet and two others named, "to be paid for by the extinguishment of debts due by the plaintiffs to other persons and in stock of the Iron Company for the residue of the price left after the extinguishment of said debts;" that the appraisers fixed the sum at $88,000, and the plaintiffs delivered the goods, &c., to the company; but that the company have not paid for them by extinguishing the debts, nor by delivering to the plaintiffs any of the capital stock of the company; whereby an action had accrued to have from the company $88,000.

The fifth count averred the agreement as in the fourth as to the appraisement, also that the stock of the company should be taken by the creditors of the plaintiffs and by the company, and held by them till the debts of the plaintiffs should be paid, and "the balance or residue of said stock left after the payment of the debts should be transferred to the plaintiffs;" that the appraisers fixed the price at $88,819.50, and the goods, &c., were delivered to the company, but they have not paid the price nor procured the stock to be taken, nor has it been taken by the creditors, whereby an action hath accrued, &c., to demand and have the *said sum*, &c.

The sixth count averred as in the fifth count and further, that the other defendants were stockholders in the Iron Company, and by force of the Manufacturing Law became liable in their individual capacity, &c., and in consideration "jointly and severally agreed

to pay," &c., and thereby an action had accrued against them to demand and have said sum, &c.

The seventh count averred that the price fixed by the appraisers was $34,319.50. The count is otherwise substantially as the sixth.

The eighth count averred substantially as the fourth, with the addition of an averment of the liability of the stockholders; and that action hath accrued, &c., to demand and have said sum, &c.

On the trial before Linn, P. J., of 25th district, the plaintiffs gave in evidence articles signed by thirteen of the defendants (stockholders) and others, dated April      1856, by which the parties signing agreed to form themselves into an association to be called The Mauch Chunk Iron Company, under the Manufacturing Law of April 7th 1849, the object of which was to manufacture iron in Mauch Chunk; the articles fixed the capital at 2000 shares of $50 each, appointed a receiver of subscriptions to the stock, and named eight directors: the persons signing agreed to pay $50 per share for stock to be subscribed by them; the company to continue for twenty years.  They then gave in evidence the certificate of the directors, sworn to April 12th 1856, certifying the organization of the company according to the articles, and giving a list of the stockholders, amongst whom are all the defendants named as such; also the certificate of approval of the Attorney-General; of the record of the papers in Carbon county and letters patent dated May 19th 1856; also the agreement between the plaintiffs and the Mauch Chunk Iron Company, dated April 8, 1856, as follows:

"The first-named party agrees to sell and convey all their effects, both real and personal of whatsoever kind we may be in possession of, for a certain price as may be appraised by John Balliet, William Butler and William L. Richards, a committee appointed for that purpose, to the Mauch Chunk Iron Company.

"And it is further agreed that the stock of said company shall be subscribed and taken by the creditors and the said company, and held by them until all the debts shall be fully paid, and the balance of the stock shall be transferred over to Weiss, Lippincott & Miner to their entire use."

Also the appraisement of the plaintiffs' property consisting of machinery, tools, ore, iron, vehicles and harness, horses, &c., stock of store goods, real estate consisting of furnace property, shops, dwellings, &c., and amounting in the whole to $88,819.50.

The appraisement was made, April 9th 1856.

They gave in evidence from the minutes of the directors of the company of May 26th 1856, resolutions that all the debts of Weiss, Lippincott & Miner, as well as the debts of Lippincott & Miner, shall be fully paid in the stock of said company, and that the balance of the stock be transferred to Weiss, Lippincott &

[*Weiss v.* Mauch Chunk Iron Co.]

Miner upon the delivery of title papers, as soon as the debts are ascertained. The executive committee to enter into an arrangement with Weiss, Lippincott & Miner, ascertaining what amount of stock is to be transferred to each of them respectively, and transact any other business connected with transfer of the real and personal property of the above firm, and procure from Weiss, Lippincott & Miner, a full and correct statement of all their debts. It appeared also from the minutes, that the transfers and title papers of the property, real and personal, of Weiss & Co. were obtained by the executive committee and recorded by order of the directors. Also a resolution to transfer $60,000 of the stock for an advance of $30,000, and an agreement of Weiss & Co. to share with the creditors the loss sustained by the transaction. They gave evidence also that the manager of the company took possession of all the property of Weiss & Co., and that some of the creditors had substituted their indebtedness against the plaintiffs for stock.

The defendants gave evidence that the names of some of them were put to the articles of association without their authority, that they had repudiated the act, that the company had been got up without any purpose to have any stock created except for the cre-ditors of Weiss & Co., that no money had ever been paid for stock, but that the capital was to consist exclusively of the property of Weiss & Co. Also the satisfaction of judgments against the plaintiffs to the amount of $19,879, by transfer of stock of the Iron Company; also the sale of the real estate of the plaintiffs on encumbrances existing prior to the conveyance to the Iron Company.

There was much more evidence given on both sides, many offers received and rejected, and bills of exception sealed.

Each party submitted a number of points, which the court did not answer categorically and which an understanding of the case does not require should be stated here.

The court after some preliminary statements charged :—

"Waiving any unnecessary discussion of the questions of law which have been presented and argued by counsel, we instruct you: First, that there can be no recovery in this action against the individual stockholders named as defendants, because the contract upon which the action is founded does not appear to us to fall within the limitations prescribed by the Act of 27th of March 1854; in other words, that the Act of Assembly does not render the stockholders liable in their individual capacities for such an undertaking as that upon which this action is founded; and secondly, that there can be no recovery against the corporation in the present form of action, that an action of debt will not lie upon the contract in evidence upon which the plaintiffs seek to recover.

[Weiss v. Mauch Chunk Iron Co.]

" Your duty, therefore, will be fully performed by rendering a verdict for the defendants, which you are directed to do."

The verdict was for the defendants.

The plaintiffs took out a writ of error and made numerous assignments of error, which the opinion of the Supreme Court renders it unnecessary to specify.

*H. Green* and *Brewster*, Attorney-General (with whom was *C. Albright*), for plaintiffs in error.—The plaintiffs having delivered their property to the company under the contract, it was the duty of the company to exercise their option to pay either in the debts of the plaintiffs and stock of the company or in money, within a reasonable time; failing to do so, they became liable to pay in money: Roberts *v.* Beatty, 2 Pa. R. 63; Fleming *v.* Potter, 7 Watts 380; Brooks *v.* Hubbard, 3 Conn. 58; Perry *v.* Smith, 22 Verm. 301; Trowbridge *v.* Holcomb, 4 Ohio 38; Pinney *v.* Gleason, 5 Wend. 394; Smith *v.* Smith, 2 Johns. R. 235; Chambers *v.* Harger, 6 Harris 15; Stewart *v.* Morrow, 1 Grant 204; White *v.* Tompkins, 2 P. F. Smith 363.

The proper construction of the agreement is that the company were to pay the liens as well as the other debts. Corporations are affected by implications in contracts: Commonwealth *v.* Cullen, 1 Harris 139; Bank of Kentucky *v.* Schuylkill Bank, 1 Pars. 182. A purchaser agreeing to pay an encumbrance on land which he buys makes the debt his own: Campbell *v.* Shrum, 3 Watts 60; Blank *v.* German, 5 W. & S. 36; Buckley's Appeal, 12 Wright 491; Burke *v.* Gummey, 13 Id. 518. The ratification of the purchase from the plaintiffs, after they were incorporated, bound them as if they had been incorporated when it was made: Rathbone *v.* Tioga Nav. Co., 2 W. & S. 79; Bank of Pennsylvania *v.* Reed, 1 Id. 106; Hayden *v.* Middlesex Turnpike, 10 Mass. 397; Salem Bank *v.* Gloucester Bank, 17 Id. 1; Thayer *v.* Boston, 19 Pick. 511; Commercial Bank of Buffalo *v.* Kortright, 22 Wend. 348; Hoyt *v.* Thompson, 19 N. Y. (5 Smith) 207. The extinguishment of the liens was evidence of appropriation in payment of the purchase-money of the real estate: Pierce *v.* Sweet, 9 Casey 151; Johnson's Appeal, 1 Wright 268. The obligation on the stockholders to pay is statutory, and is to be strictly held: Act of 1854 *supra;* Mansfield *v.* Willcox, 2 P. F. Smith 377; Patterson *v.* Wyomissing Manufac. Co., 4 Wright 121; Mill-dam Foundry *v.* Hovey, 21 Pick. 417. A stockholder creditor may enforce his rights against the company or his fellows as any other creditor: Gordon *v.* Preston, 1 Watts 388; Revere *v.* Boston Copper Co., 15 Pick. 363; Woodruff *v.* Chittenden, 4 Bosw. 406; Briggs *v.* Penniman, 8 Cowen 392. The obligation of the stockholders is original and absolute, not conditional as guarantors or sureties: Moss *v.* Averell, 6 Seld. 449 (N. Y.);

Mokelumne *v.* Woodbury, 14 Cal. 265 ; Donworth *v.* Coolbaugh, 5 Clarke (Iowa) 300 ; Belmont *v.* Coleman, 7 Smith (N. Y.) 96 ; Corning *v.* McCullough, 1 N. Y. (1 Comst.) 47 ; Worrall *v.* Judson, 5 Barb. 210 ; Abbott *v.* Aspinwall, 26 Id. 202 ; Allen *v.* Sewall, 2 Wend. 327 ; 2 Hill 265 ; 3 Id. 188 ; Harger *v.* McCullough, 2 Den. 119 ; Allibone *v.* Hager, 10 Wright 48 ; Megargee *v.* Wakefield, 12 Id. 442.   The suit might be against part of the stockholders : McHose *v.* Wheeler, 9 Wright 32.

*P. H. Weitzel, M. M. Dimmick* and *L. Hakes,* for defendants in error, were stopped by the court.   In their paper-book they cited on the form of action : Long *v.* Long 1 Hill 597 ; Tappan *v.* Campbell, 9 Yerger 436 ; Deberry *v.* Darnell, 5 Id. 451 ; Watson *v.* McNairy, 1 Bibb 356 ; Farr *v.* Campbell, 2 Id. 472 ; Hurdspeth *v.* Gray, 5 Pike 157 ; January *v.* Henty, 3 Monroe 8.

The opinion of the court was delivered, July 2d 1868, by

SHARSWOOD, J.—The whole case of the plaintiffs rests upon the foundation that the agreement of April 8th 1856 was a sale by them to the Mauch Chunk Iron Company, for the price at which the property should be appraised by the referees named, payable in stock of the company.   Is this the legal effect of the instrument ?   The counsel for the plaintiffs admit that it is drawn in a bungling manner ; for it certainly does not express on its face any such engagement as is contended.   There is no agreement by the company to pay the sum ascertained by the referees.   The whole argument for plaintiffs rests upon the meaning attached to the word "price."   They contend that in legal intendment an agreement by one party to sell and convey property to another for a certain price is that the vendee is to pay that price to the vendor.   So it would be if the agreement stopped there.   But it goes on to stipulate how that price or sum of money is to be disposed of, by which it appears that it is not to be paid to the plaintiffs.   "And it is further agreed that the stock of said company shall be subscribed and taken by the creditors and the said company, and held by them until all the debts shall be fully paid, and the then balance of the stock shall be transferred over to Weiss, Lippincott & Miner, to their entire use."   Looking at the whole instrument, we think it clear that it was an agreement to form a joint stock company or organize a corporation, especially as there was at the date of the agreement no such corporation as the Mauch Chunk Iron Company.   The real and personal effects of the firm of Weiss, Lippincott & Miner were to constitute the capital stock or a part of the capital stock of the corporation when it should be organized.   The value of such effects was to be ascertained by an appraisement, and stock of the corporation to

[Weiss v. Mauch Chunk Iron Co.]

that amount was to be issued directly to such of the creditors of Weiss, Lippincott & Miner as should agree to accept it in payment of their debts. The stock was to be held by the company until all the debts were paid, and the then balance of it transferred to Weiss, Lippincott & Miner. It was then an agreement by Weiss, Lippincott & Miner to subscribe to the stock of the proposed corporation to the amount of the appraised value or price of their firm property, and an agreement by the corporation to issue shares of stock in the special manner provided for in the contract. It may be admitted that they recognised and ratified this arrangement after the charter of incorporation so as to make it binding on them. If the Mauch Chunk Iron Company violated this agreement by refusing to issue such shares when and as they were obliged to do according to its terms, Weiss, Lippincott & Miner would be entitled to maintain an action to recover such damages as they might be able to show that they had sustained, but certainly would have no right to sue for the sum or price in money at which their effects were appraised. There is a broad distinction between an agreement to pay a certain sum of money in shares of stock or other property, and an agreement to issue such shares or deliver such other property in specie. In the former case the refusal to pay in property gives the creditor the right to demand the sum of money, and to maintain an action of debt. In the latter his only claim is for damages in an action of assumpsit or covenant, according as the agreement is under seal or not. "The action of debt," says Buller, "is founded upon a contract either express or implied in which the certainty of the sum or duty appears; and the plaintiff is to recover the sum *in numero*, and not to be repaired in damages, as he is in those actions which sound only in damages, such as assumpsit," &c. : Buller's Nisi Prius 167. Wherever *indebitatus assumpsit* is maintainable, debt also is : Walker *v.* Witter, Dougl. 6 ; United States *v.* Colt, Peters's C. C. Rep. 145. Where a special agreement has been so far performed that nothing remains but a mere duty to pay money, which it is for the plaintiff to show, a general count is all that is required: Bomeisler *v.* Dobson, 5 Whart. 405. To render a note payable in property admissible under the common counts, it must contain a promise to pay to the plaintiff a sum certain, either in money or property: Taplin *v.* Packard, 8 Barb. S. C. 220. Citations might be multiplied to the same effect: Bracegirdle *v.* Hincks, 24 Eng. Law & Eq. 524 ; Crockett *v.* Moore, 3 Sneed (Tenn.) 145 ; Butcher *v.* Carlile, 12 Gratt. 521. Here, as we construe this contract, there was no duty to pay money, but to deliver stock to parties other than the plaintiffs, in the first instance, and subsequently, on a certain event, to them ; in other words, a special agreement to perform certain things *in futuro*, not a duty arising immediately on the transfer by the plaintiffs

of their effects to the corporation: Kelly *v.* Foster, 2 Binn. 8. There arose no debt or duty even to deliver stock to the plaintiffs, but to their creditors or such of them as would accept it in payment, and they were not to be entitled to the balance "until all the debts shall be fully paid." The plaintiffs contend that on their construction of the instrument, the corporation was bound to pay the debts in money if the creditors would not accept the stock in payment. They might do so indeed, and appear in some instances to have done so, but we can perceive no such engagement on their part, express or implied.

It might be contended, indeed, that though on the principle of the common law and in other states, an action of debt could not be maintained on such an agreement as this, a different rule has been established in this state. By the "Act to regulate arbitrations and proceedings in courts of justice," passed March 21st 1806, 4 Sm. L. 326, § 10, a process by summons in a plea of debt was provided in the case of any debt due to a plaintiff, "either by bond, note, book account, rent, damage or assumption," words broad enough, certainly, to cover this and almost every other case in which assumpsit or covenant would otherwise have been the appropriate remedy. That act was intended to dispense with the profession of the law, to make every man his own lawyer. After a full and fair trial it signally failed. Perhaps no statute ever passed made more work for lawyers or brought greater gains to the profession. *Requiescat in pace.* This section of the act of 1806 was supplied and repealed by the Act of June 13th 1836, Pamph. L. 573, entitled "An Act relating to the commencement of actions." It was there enacted that "personal actions except in cases where other process shall be especially provided, shall be commenced by a writ of summons," the form of which is then given, and the plea is to be "in an action of debt (or as the case may be)," see sections 2 and 3. Judge Stroud omitted this tenth section from his edition of the digest (6th edition, 1841, p. 245), as also did Mr. Dunlop (Dunlop's L. 235), the latter expressly giving as his reason that it was supplied by the act of 1836. The exception of other process especially provided, evidently refers to writs of capias ad respondendum and of foreign attachment provided by the same act. What remains of the Act of 1806, bearing on this question, is the fifth section, providing for the filing of a statement. But there is nothing in that as to the form of action. "In all cases where a suit is brought for the recovery of any debt," a statement may be filed in assumpsit as well as in debt, not in covenant indeed (Dixon *v.* Sturgeon, 6 S. & R. 25), because it is confined to actions "on a verbal promise, book account, note, bond, penal or single bill, or all or any of them." The words "rent, damages or assumption," are not used in the fifth section in regard to statements. There is no reason for saying then,

[Weiss v. Mauch Chunk Iron Co.]

though there was before the Act of June 13th 1836, that wherever a statement could be filed, debt would lie.    In Camp v. Bank of Owego, 10 Watts 130, where the question was whether the endorser of a promissory note may maintain an action of debt against the maker, Judge Rogers, after a clear opinion in favor of the action on general principles, turns to the Act of 1806, and quotes the language of the tenth section as conclusive.    It is evident that his attention was not called to the fact that the tenth section had been supplied by the Act of 1836, which had been passed but a few years before.    So as to Loose v. Loose, 12 Casey 538.    There a reference to the Act of 1806 was not necessary, but Camp v. Bank of Owego, is affirmed, and it is added, " wherever a statement is authorized by the act there the form of debt is given."    This is but a repetition of the dictum by Judge Rogers to the same effect, evidently grounded on the connection between the fifth and tenth sections.    Literally, indeed, this case would not fall within the fifth section.    It is not founded " on a verbal promise, book account, note, bond, penal or single bill, or all or any of them."    Perhaps by a *verbal,* a *parol* promise was intended, a written promise as well as one by word of mouth.    But it would rather be a stretch of construction to say so.    However this may be, we are of opinion that the question whether an action ought to be debt or special assumpsit, is no longer in Pennsylvania affected by the words of the tenth section of the Act of 21st March 1806.    On the whole, then, we think that the remedy of the plaintiffs was by an action on the case in assumpsit, in which it would have been necessary for them to have filed a special count on this agreement, and that the learned judge below was right in holding that an action of debt against the corporation defendants could not be maintained.

But even if the form had been assumpsit the plaintiffs could not have had a verdict in their favor on any of the counts in their declaration.    In no one of them is the agreement set out *in hæc verba,* or declared on according to its legal effect : Steph. on Pl. 433 ; Gould's Pl. 160.    In every count it is laid as an agreement to pay a sum or price in money, which we have seen was not its true construction.

· If the view we have taken of the agreement is correct, then it is clear that the stockholders could not be made personally liable for its breach in any form of action.    By the Act of Assembly passed March 27th 1854, Pamph. L. 215, entitled " A further supplement to an Act entitled an Act to encourage manufacturing operations in this commonwealth," it is provided " that the stockholders in all companies incorporated in pursuance of the provisions of the act to which this is a supplement, and the several supplements thereto, including this act, shall hereafter be jointly and severally liable in their individual capacities, only for debts

[Weiss *v.* Mauch Chunk Iron Co.]

due to miners, quarrymen and other laborers employed by such companies and for machinery, provisions, merchandise, country produce and materials furnished for said companies respectively." The claim arising on the breach of the agreement in suit was not a debt for machinery, provisions, merchandise, country produce or materials furnished for the company. It is true that part of the effects of Weiss, Lippincott & Miner were of the character here described, but there was no debt for them. The act evidently contemplated an ordinary sale and delivery to the company in the course of its usual business. To apply the provision of the law to this particular agreement would be a strange perversion of justice. Creditors of the plaintiffs, who have accepted what now turns out to be the worthless stock of this company in payment of their debts, are to be made to pay the plaintiffs in money for their effects which *in foro conscientiœ* were originally their (the creditors') own property. They are to be visited with a double loss. There are some claims the statement of which carries on its face a sufficient answer to them.

We think, then, that on the whole case of the plaintiffs, as well the parts offered and rejected as those given in evidence, there was nothing to go to the jury. This renders it unnecessary to examine separately the twenty-eight errors assigned. If some of them, considered *in thesi*, would have to be sustained, we would not reverse and send back the cause for another trial, when it is clear that in no event can the plaintiffs recover in the form of action which they have chosen.

Judgment affirmed.