# Alabama Foundry & Machine Works *v*. Dallas.

*Action upon Note given for Subscription to Capital Stock.*

1. *Action upon note given for subscription to stock; sufficiency of evidence.*—In an action by a corporation upon a promissory note, given by defendant for the subscription to the capital stock of the plaintiff, where it is shown that the president and general manager of the plaintiff corporation at the date of the execution of the note sued on and for the purpose of increasing his subscription, made fraudulent representations to the defendant as to who were the stockholders in said corporation and regarding the value of the property owned by said corporation, and that the defendant relied upon such representations, and by reason thereof was induced to subscribe for the stock, and to execute the note sued on, the plaintiff is not entitled to recover, but upon issue joined upon the proper pleadings, the defendant is entitled to judgment.

APPEAL from the Circuit Court of Madison.

Tried before the Hon. H. C. SPEAKE.

This was an action brought by the appellant against the appellee; and counted upon a promissory note which was given by the defendant to the plaintiff, in payment of his subscription to the capital stock of the plaintiff.

The defendant pleaded the general issue and several special pleas. To all of the special pleas, except pleas numbered 8, 10 and 11, demurrers were sustained. The cause was tried upon issue joined upon these pleas. The facts of the case necessary to an understanding of the decision on the present appeal, are sufficiently stated in the opinion.

33

The cause was tried by the court without the intervention of a jury, and upon the hearing of all the evidence the court rendered judgment in favor of the defendant. The plaintiff made a motion for a new trial, which motion was overruled. The plaintiff appeals, and assigns as error the rendition of judgment in favor of the defendant, and the judgment overruling the motion for a new trial.

R. W. WALKER, for appellant.—The note as set forth in the complaint having been proved, the burden was on the defendant to sustain by proof at least one of his special pleas, and unless this was done the plaintiff was entitled to judgment.—3 Brick. Dig., 433, § § 388, 392. The burden on the defendant was, not to prove a defense in a general way, but to prove the particular states of fact alleged in those pleas. He had to establish at least one of those states of fact by a preponderance of the evidence. Each of those pleas set up false representations. The alleged representations themselves, and that they were falsely and fraudulently made, had to be clearly established before the defendant could be entitled to a judgment.—*Howle v. North Birmingham Land Co.*, 95 Ala. 390.

HUMES, SHEFFEY & SPEAKE, *contra.*—Corporations are chargeable with the fraudulent representations of their agents.—Cook on Stock, etc., (3d ed.), § 139. Parol evidence is admissible to show the fraud, since it does not vary or contradict the contract, but shows that the contract was properly formed.—Cook on Stock, etc., (3d ed.), § 140 and notes. Any false statement by the authorized agents of a corporation in regard to the past or present status of the corporate enterprise or material matters connected therewith, whereby subscriptions are obtained, is a fraudulent representation.—Cook on Stock, etc., (3d ed.), § 145, and note. It is fraud to state that a certain person had subscribed for stock when in fact his stock had been given to him.—Cook on Stock, etc., (3d ed.), § 145, note 6. Subscriber is not bound to investigate the truth of representations. Cook on Stock, etc., (3d ed.), § 150 and note. Mis-

statements as to the names of the directors and arrangement with person of good financial standing to give him stock, etc., fraudulent.—2 Thompson on Corp.., § 1398; 3 Thompson on Corp., § 3707. Promoter going into the "directory market" renders subscription obtained fraudulent.—2 Thompson Com. on Corp., § 1410.

TYSON, J.—This suit is brought upon a promissory note given for subscription for stock in the plaintiff corporation. The cause was tried by the court without the intervention of a jury upon the issues presented by pleas numbered 8, 10 and 11. There are only two matters presented to us for consideration and decision. The first of these is whether the evidence tended to support the averment of either of the pleas. The eighth plea alleges that "at the time of the execution of the note sued on, J. B. Harrison, who was acting for plaintiff and authorized to bind it in the premises, in order to induce defendant to subscribe for stock in the plaintiff corporation and to execute the note sued on, represented to defendant that he together with J. R. Stevens, O. B. Patton, W. J. Wellman and several others had purchased for the plaintiff a foundry and machine shop at Decatur, Alabama, paying $35,000 therefor. Defendant alleged that said statements and representations of said Harrison as plaintiff's agent was untrue, and said foundry and machine shop at Decatur did not cost said Harrison and associates $35,000, or nearly that amount. Defendant was not aware that said representation and statement of said Harrison were untrue, at the time of the execution of said note, but relied thereon, and by reason thereof was induced to subscribe for stock in plaintiff corporation and execute the note in suit. And defendant pleads said fraudulent representations of plaintiff's agent in bar of this suit."

The evidence is without dispute that Harrison was the president and general manager of the plaintiff corporation at the date of the execution of the note sued on, and as agent of the plaintiff conducted the negotiations for the sale of the stock to the defendant which resulted in the giving of the note, which note was deliver-

ed to him for the plaintiff. Halsey testified that in the latter part of December, 1897, he went to Nashville, Tenn., with Harrison, and at his request introduced him to the defendant. That Harrison proposed to sell the defendant this stock, and made the statement that Stevens, Patton, Wellman, Nolen and Greenleaf were stockholders in the plaintiff company, and that it had what is known as the Ivens & Son Machine Shop at Decatur, and that they had a hay press with the sole right to manufacture it, which he was selling. That the property cost the company $35,000, or "was put into the company at $35,000." The defendant testified that Harrison represented that he was manager of a foundry shop at Decatur that he had purchased at a very low price. That it cost $35,000. That he had bought it for $35,000 and paid for it. That he had sold stock to several gentlemen, Stevens, Wellman, Patton and several others. That he, witness, presumed as a matter of course, that the stock he had sold had gone to pay for the shop, and in fact Harrison told him as much. He further testified that Harrison made the statement to him that the company owned the foundry and machine shops, and some land and buildings at Decatur that had cost $35,000. Harrison in his testimony admits that he said to the defendant: "We had capitalized the company at $50,000, $35,000 of the stock was to go toward paying for the *plant*." Harrison also admits showing to the defendant the incorporation papers of the plaintiff company for the purpose of inducing him to make the subscription. One of the papers entitled "subscription to the capital stock of the Alabama Foundry & Machine Works" exhibited to the defendant by Harrison showed the names of Stevens, Patton, Wellman and several others as subscribers to the stock in connection with the recital that "said subscriptions are payable in money with the privilege of discharging the same in the property hereinafter described, which property is to be conveyed to the Alabama Foundry and Machine Works on or before the ... day of ......, 1897. The consideration for said property hereinbelow described is thirty-five thousand dollars ( ($35,000)." In this same paper

is a description of the property proposed to be conveyed by the stockholders to the plaintiff corporation in payment of their subscriptions. The exhibition of this paper by Harrison was the equivalent of a representation by him of every fact contained in it as true. The reasonable inference to be drawn from the recitals in this paper is that Harrison and his associate stockholders were the owners of this property which cost them $35,000, and that they were to convey it to the company at that price. Indeed, in the absence of explanation, it is the only reasonable inference to be drawn. The defendant had the right to assume every fact disclosed in the paper to be true. It was shown him for the purpose of influencing him to make the subscription. It was of the essence of good faith that Harrison should have told him that the property was not owned by the stockholders, but owned by him, and that he had purchased it for $12,000, paying $1,000 in cash and executing his eleven promissory notes payable semi-annually, with interest at 6 per cent. per annum secured by a mortgage on the property. It was also important to prevent deception, that Harrison should have made known to the defendant that these stockholders had paid nothing for their stock, and that it was agreed they were not to pay anything on account of their subscription. It is not disputed that the defendant was not aware that the representations and statements of Harrison were untrue at the time of the execution of the note and that he relied upon them and was induced by them to subscribe for the stock and execute the note sued on.

We are of the opinion that the evidence fully sustains the averments of the eighth plea. It is unnecessary to consider the other pleas, since the defendant was entitled to a judgment upon that one.

There is no merit in the contention that defendant had waived the fraud by denying his liability before suit brought, upon another and entirely different ground. There was no pleading in the case tendering such an issue. But whether this was necessary, we do not decide. It is sufficient to say that it was not shown by the

evidence that at the time defendant made the denial relied upon as a waiver, he knew of the fraud that had been perpetrated upon him.

The other matter presented is, the refusal of the court to grant a new trial. In this, there was no error. The great weight of the evidence was on the side of the defendant and fully supports the judgment rendered.

Affirmed.