(83 South. 341)

WRIGHT, Ins. Com'r of Georgia, v. HIX.
(3 Div. 398.)

(Supreme Court of Alabama. Oct. 30, 1919.)

1. PLEADING ☞67—PLAINTIFF MAY IN HIS COMPLAINT ANTICIPATE DEFENSES.

In an action by the insurance commissioner of the state of Georgia on a note given by a subscriber to the stock of an insolvent insurance company, the commissioner may anticipate the defense of fraud by setting out in the complaint that under the laws of Georgia, after insolvency, a subscriber cannot set up fraudulent representations inducing the contract of subscription as against creditors who became such subsequent to the subscription, and that the insurance company was insolvent, and had incurred large obligations since the subscription.

2. INSURANCE ☞44—PLEA IN ACTION BY INSURANCE COMMISSIONER ON NOTE FOR STOCK IN INSOLVENT COMPANY SUBJECT TO DEMURRER.

In an action by the insurance commissioner of the state of Georgia on a note given in payment of subscription to the stock of a Georgia company which had since become insolvent, where the commissioner set up that the company had incurred obligations since the subscription, was insolvent, for the purpose of anticipating the defense of fraud, allegations in the plea setting up fraud, and that the subsequent creditors had not requested or authorized the commissioner to sue, are insufficient to rebut the anticipatory allegations of the complaint, and the plea is subject to demurrer.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

3. INSURANCE ☞44—PLEA IN ACTION ON NOTE GIVEN FOR SUBSCRIPTION TO STOCK SUBJECT TO DEMURRER.

In such action allegations in the subscriber's plea that the subscriber had not received any benefit from the insurance company, and had not participated in any stockholders' meetings, etc., are insufficient to raise any issue; hence the plea is subject to demurrer.

Thomas, J., dissenting.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by William A. Wright, as Insurance Commissioner of the State of Georgia, against W. T. Hix in assumpsit. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The allegations of the complaint sufficiently appear from the two opinions. The pleas were as follows:

(1) That prior to and at the time of the execution of the note sued on the said Empire Life Insurance Company was a nonresident corporation duly, legally, and fully organized and incorporated, and was engaged in business; that subsequent to the said incorporation of the said the Empire Life Insurance Company, and while it was a going concern, engaged in business for which it was organized, it issued a large amount of additional capital stock, commonly known as treasury stock; that this issuance of said stock was prior to the execution of said note; that the agent, servant, or employé of the said company, who was engaged in the business of selling said additional stock for the said company, while acting within the line or scope of his employment, on, to wit, May 24, 1914, in the county of Montgomery, state of Alabama, sold to this defendant a part of said additional stock of the par value of, to wit $1,100; that the note here sued on was, in the county of Montgomery, state of Alabama, given by the defendant, who was then a resident of said state, to the said corporation for said stock sold as aforesaid; that said note was procured and obtained from the defendant by the fraud or misrepresentation of the said agent, servant, or employé of the defendant while so acting in the line or scope of his said employment, in this; the said agent, servant, or employé at the time of the said sale, while so acting, falsely represented and stated to the defendant that said company was solvent, and in a flourishing condition, that it had paid to its stockholders regularly large dividends, and had not since its organization failed to pay yearly to its stockholders less than 8 per cent. per annum on their investments.

Defendant further avers that said representations and statements were false, fraudulent, and untrue; that as a matter of fact said company was not in a flourishing condition; that it had never paid to its stockholders large dividends, and had never since its organization paid yearly to its stockholders 8 per cent. per annum on their investments; that he, the defendant, was ignorant of the falsity and untruth of said statements and representations; that believing said statements and representations to be true, and relying and acting thereon in said county and state, he bought said stock, and then and there executed and delivered the note here sued on in payment therefor; that the said stock purchased as aforesaid was held and retained by the company as collateral security for the payment of said note; that there was no other consideration for said note than as above set forth; that the transfer of said stock to defendant was never entered upon the books of said corporation.

Defendant further avers that he has never participated in any meeting of the stockholders of said company, has never been an officer thereof, and has never received or accepted any benefit of any character whatever from said company by reason of his said purchase of said stock.

Defendant further avers that he did not learn of or have any notice of said fraud or misrepresentation until the affairs of said company were placed in the hands of the plaintiff, which was in the month of January, 1915, before said note became due; that he thereupon and immediately notified plaintiff of the fraud that had been practiced upon him, as averred hereinbefore, and rescinded said sale, and stated that he would not pay said note when the same became due, and that he relinquished all of his right, title, interest, and claim in and to said stock, and repudiated said contract, and offered to rescind said purchase.

The defendant further avers that at the time the business and affairs of said Life Insurance Company were placed in the hands of plaintiff as Insurance Commissioner of the State of Georgia the said company was indebted in a large sum to creditors whose debts were incurred prior to the execution of said note, and that only a small part of the indebtedness of the said company were incurred subsequent to said time, and that plaintiff, as such Insurance Commissioner of the State of Georgia, was at the time of the filing of the suit and is now conducting the business of such company, and no creditor of said company, whose debt was contracted subsequent to the execution of said note, has requested, authorized, or empowered the plaintiff in this cause to institute this suit.

Defendant further avers that all of the books and affairs of and business of said Empire Life Insurance Company were kept, conducted, and transacted in the state of Georgia; that he, from the time of the execution of said note to the time when the affairs of said company were placed in the hands of the plaintiff, did not visit the state of Georgia, received no notice or information and had no knowledge of the true condition of said corporation or of said fraud or misrepresentation, and nothing occurred to put him, as a reasonable man, on notice of said true conditions or of said fraud or misrepresentation.

(2) The defendant, for answer to the complaint and each count thereof, pleads and says:

That prior to and at the time of the execution of the note sued on the said Empire Life Insurance Company was a nonresident corporation fully, legally, and duly organized and incorporated, and was engaged in business; that subsequent to the said incorporation of the said the Empire Life Insurance Company, and while it was a going concern, engaged in business for which it was organized, it issued, or authorized to be issued, a large amount of additional cap-

ital stock, commonly known as treasury stock; that this issuance of said stock was prior to the execution of said note; that the agent, servant, or employé of the said company who was engaged in the business of negotiating the sale of said additional stock for the said company, while acting in the line or scope of his employment, on, to wit, May 24, 1914, in the county of Montgomery, state of Alabama, made and entered into an agreement or contract with defendant whereby the defendant made and executed in said county and state the note here sued on, and in consideration thereof said agent, while so acting, agreed to sell to this defendant a part of said additional stock of the par value of, to wit, $1,100, which sale was to be made when plaintiff should pay the note here sued on. Defendant further avers that said note was procured and obtained from the defendant by fraud or misrepresentation of the said agent, servant, or employé of the said company while so acting, in this: the said agent, servant, or employé at the time of the said agreement, while so acting, falsely represented and stated to the defendant that said company was solvent, and in a flourishing condition, that it had paid to its stockholders regularly large dividends, and had not since its organization failed to pay yearly to its stockholders less than 8 per cent. per annum on their investments.

Defendant further avers that all of said representations and statements were false, fraudulent, and untrue; that, as a matter of fact, said company was insolvent, and was not in a flourishing condition; that it had never paid to its stockholders large dividends, and had never since its organization paid yearly to its stockholders 8 per cent. per annum on their investments; that he, the defendant, was ignorant of the falsity and untruth of said statements and representations; that believing said statements and representations to be true, and relying and acting thereon, he then and there executed and delivered the notes here sued on; and the defendant further avers that he has never participated at any meeting of the stockholders of said company, has never been an officer thereof, and has never received or accepted any benefits of any character whatever from said company by reason of said stock.

Defendant further avers that he did not learn of or have any notice of said fraud or misrepresentation until the affairs of said company were placed in the hands of the plaintiff, which was in the month of January, 1915, before said note became due; that he thereupon and immediately notified plaintiff of the fraud that had been practiced upon him as averred hereinbefore, and rescinded said sale, and stated he would not pay said note when the same became due, and that he relinquished all of his right, title, interest, and claim in and to said stock, and repudiated said contract, and offered to rescind same; and defendant further avers that there was no other consideration for said note than as above hereinbefore set forth.

The defendant further avers that at the time the business and affairs of said Life Insurance Company were placed in the hands of plaintiff, as Insurance Commissioner of the State of Georgia, the said company was indebted in a large sum to creditors whose debts were incurred before the execution of said note, and that only a small part of the indebtedness of the said company were incurred subsequent to said time, and that plaintiff, as such Insurance Commissioner of the State of Georgia, was at the time of the filing of this suit, and is now, conducting the business of such company, and no creditor of said company whose debt was contracted subsequent to the execution of said note has requested, authorized, or empowered the plaintiff in this cause to institute this suit.

Defendant further avers that all of the books and affairs and business of said Empire Life Insurance Company were kept, conducted, and transacted in the state of Georgia; that he, from the time of the execution of said note to the time when the affairs of said company were placed in the hands of the plaintiff, did not visit the state of Georgia, received no notice or information, and had no knowledge of the true condition of said corporation or of said fraud or misrepresentation, and nothing occurred to put him, as a reasonable man, on notice of said true condition of said fraud or misrepresentation.

Rushton, Williams & Crenshaw, of Montgomery, for appellant. The acceptance of a subscription to stock in an existing corporation renders the subscriber a stockholder and liable as such. 10 Cyc. 380, 389; 2 Clark & Marshall on Priv. Corp. §§ 378 and 462d; 1 Thomp. Corp. (2d Ed.) §§ 547, 548, 550; 1 Cook on Corp. § 192; Beene v. Cahawba R. Co., 3 Ala. 660; Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203; Hawley v. Upton, 102 U. S. 314, 26 L. Ed. 179; New Albany R. Co. v. McCormick, 10 Ind. 499, 71 Am. Dec. 337; Sarbach v. Kansas Fiscal Agency Co., 86 Kan. 734, 122 Pac. 113, Ann. Cas. 1913C, 415, and note; Spratlin v. Westbrook, 140 Ga. 625, 631, 79 S. E. 536.

The liability of a stockholder of a corporation is determined by the laws of the state in which it was organized, and not by the laws of the state of the domicile of the stockholder. Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337; Canada Sou. Ry. Co. v. Gebhard, 109 U. S. 527, 3 Sup. Ct. 363, 27 L. Ed. 1020; Nashua Savings Bank v. Anglo-Amer. Co., 189 U. S. 230, 23 Sup. Ct. 517, 47 L. Ed. 786; Hawkins v. Glenn, 131 U. S. 332, 9 Sup. Ct. 739, 33 L. Ed. 192; Glenn v. Liggett, 135 U. S. 544, 10 Sup. Ct. 867, 34 L. Ed. 267; Bernheimer v. Converse, 206 U. S. 533, 27 Sup. Ct. 755, 51 L. Ed. 1163, 1176.

The courts of Alabama are required by the full faith and credit clause of the Constitution of the United States to give effect to the decree of the superior court of Fulton County, Ga., judicially determining that it is necessary for the protection and payment of creditors of the Empire Life Insurance Company that all stock subscriptions be collected by plaintiff. Marin v. Augedahl, 247 U. S. 142, 38 Sup. Ct. 452, 62 L. Ed. 1038; Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163; Converse v. Hamilton, 224 U. S. 243, 32 Sup. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292; Selig v. Hamilton, 234 U. S. 652, 34 Sup. Ct. 926, 58 L. Ed. 1518, Ann. Cas. 1917A, 104; Royal Arcanum

v. Green, 237 U. S. 531, 35 Sup. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771; Hancock National Bank v. Farnum, 176 U. S. 640, 20 Sup. Ct. 506, 44 L. Ed. 619.

Where corporate indebtedness is incurred between the date of a subscription to stock and the insolvency of the corporation, the right of the subscriber to rescind for fraud inducing the contract of subscription is subordinate to the right of the receiver to recover the amount due on the subscription. Turner v. Grangers' Ins. Co., 65 Ga. 649, 38 Am. Rep. 801; Gress v. Knight, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900; Empire Life Insurance Co. v. Brown, 145 Ga. 818, 89 S. E. 1085; Stone v. Walker, 201 Ala. 130, 77 South. 554, 561, L. R. A. 1918E, 839; Newton National Bank v. Newbegin, 74 Fed. 135, 20 C. C. A. 339, 33 L. R. A. 727; Burleson v. Davis (Tex. Civ. App.) 141 S. W. 559; 10 Cyc. 440, 441, 442. The rights of all creditors of the corporation are vested by the law of the state of Georgia in the insurance commissioner of the state, and he may represent a special class of creditors, as well as general creditors. McKey v. Wright, 147 Ga. 662, 95 S. E. 217; Relfe v. Rundle, 103 U. S. 222, 26 L. Ed. 337, 339; Converse v. Hamilton, 224 U. S. 260, 32 Sup. Ct. 415, 56 L. Ed. 755, Ann. Cas. 1913D, 1292; Bernheimer v. Converse, 206 U. S. 534, 27 Sup. Ct. 755, 51 L. Ed. 1176; Great West. M. Co. v. Harris, 198 U. S. 561, 576, 25 Sup. Ct. 770, 49 L. Ed. 1163, 1167. In re Lum, 254 Fed. 780, 166 C. C. A. 226. A person induced by fraudulent representations to subscribe for stock in a corporation must be vigilant in discovering the fraud and repudiating the contract, in order to be entitled to rescind. Chubb v. Upton, 95 U. S. 665, 24 L. Ed. 523, 524; Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203; Gress v. Knight, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900; Smith v. Jones, 173 Ky. 776, 191 S. W. 500, L. R. A. 1917C, 890, 894.

Hill, Hill, Whiting & Thomas, of Montgomery for appellee. The allegations of both pleas are sufficient. Virginia Land Co. v. Haupt, 90 Va. 533, 19 S. E. 168, 44 Am. St. Rep. 939; King v. Livingston, 180 Ala. 118, 60 South. 143; Shahan v. Brown, 167 Ala. 534, 52 South. 737; McDonald v. Pearson, 114 Ala. 630, 21 South. 534; Jones v. Anderson, 82 Ala. 302, 2 South. 911; Comer v. Franklin, 169 Ala. 573, 53 South. 797.

The obligation was made in Alabama was to be discharged in Alabama, and was governed by the laws of Alabama. 8 Corpus Juris, 86. Counsel also cite 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900; 81 Md. 435, 32 Atl. 322, 33 L. R. A. 721; 170 Ind. 686, 84 N. E. 814, 85 N. E. 344, 18 L. R. A. (N. S.) 347; Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1165.

ANDERSON, C. J. The complaint contains one count, and to which the defendant interposed two special pleas. The plaintiff demurred to said pleas, which were overruled by the court; and the question involved upon this appeal is the correctness vel non of the trial court in overruling the plaintiff's demurrers to said pleas.

The plaintiff, William A. Wright, sues in the capacity of Insurance Commissioner of the State of Georgia, and claims of the defendant $1,100 due upon a promissory note made to the Empire Insurance Company on May 24, 1914, with interest thereon. The complaint charges a Georgia contract, in that the note was given by the plaintiff in payment of certain stock in said insurance company subscribed to by him. The complaint also charges that the defendant was a subscriber to the stock of said company, and from the additional facts averred he may have been a stockholder as well as a subscriber. See note in case of Sarbach v. Kansas Agency Co., 28 Ann. Cas. 1913C, 418, and cases there cited, including the case of Fulgam v. Macon, 44 Ga. 597. But be this as it may, the complaint charges that the defendant is a subscriber, and the fact that he is sued as a subscriber or as a stockholder, one or both, or the sufficiency of averment as to the capacity in which he is sued, is not questioned by demurrer. The complaint also charges and sets up the laws of Georgia, and such facts thereunder as authorized the maintenance of this suit by the plaintiff as for assets of the insolvent insurance company, and none of which said averments are controverted or traversed by the pleas in question.

[1, 2] The complaint, however, doubtless in anticipation of a defense of fraud in the procurement of the subscription to the stock and the giving of the note, charges an estoppel against such a defense by averring that, under the laws of the state of Georgia, after the insolvency of a company and the appointment of a receiver, a subscriber cannot set up fraud or fraudulent representation inducing the contract of subscription as against creditors of the company who become such subsequent to such contract of subscription, and that at the time the affairs of said company were placed in the hands of the commissioner as aforesaid the said company was insolvent, and a large amount of said indebtedness, to wit, over $30,000, had been incurred after the date of said note and the date when defendant became a stockholder in said corporation, and that a large part of said indebtedness still remains unpaid. This last averment could have possibly been omitted from the complaint and set up by way of replication to the pleas, but the plaintiff had a right to incorporate same in his complaint in anticipation of this defense, and will, of course, have to prove same, and will lose his case should he fail to prove this material averment; but the sufficiency of the

averment is not challenged by demurrer, nor is the soundness of the law of Georgia as thereunder averred questioned by the pleas. They merely attempt to set up fraud in the procurement of the defendant's subscription to the stock and the execution of the note, and do not controvert or traverse the material facts averred, but attempt to evade the force of same by setting up that only a small part of the indebtedness of said company was incurred subsequent to the time of the transaction with the defendant, and that no creditor of said company whose debt was contracted subsequent to the execution of said note has requested, authorized, or empowered the plaintiff in this cause to institute this suit. These pleas do not, therefore, controvert the fact that there were subsequent creditors as averred by the complaint. They simply say that a small portion of the indebtedness was incurred subsequent to said transaction. Nor does the averment that such subsequent creditors as may have existed had not requested, authorized, or empowered the plaintiff in this cause to institute this suit, controvert or charge a legal defense to the action. The complaint sufficiently charges the right and authority of the plaintiff to maintain this suit under the laws of Georgia, whether he was requested, authorized, or empowered to do so by the subsequent creditors or not.

[3] It is also true that the pleas deny that defendant ever participated in a stockholders' meeting of the company, or has ever been an officer of same, or that he has ever received or accepted any benefit of any character whatever from said company by reason of his said purchase of said stock. This averment, however, is in no sense a denial of the material allegations of the complaint that he subscribed for the stock and gave his note as the purchase price for same, or that the certificate was issued to him, and was held by the company as collateral security for his indebtedness. It merely negatives a circumstance which might perhaps constitute him a stockholder, though other important essentials did not exist; but this conduct was not charged or relied upon in the complaint as constituting him a subscriber or stockholder, and the plea does not traverse the material averment in the complaint charging that the defendant gave his note for the purchase price of 11 shares of capital stock which had theretofore been subscribed for by him, and that certificate for said 11 shares of said capital stock was duly issued by said company in the name of the defendant, and was retained by it as security for the payment of said note. This averment of the complaint is not traversed by the plea, and the sufficiency of same is not challenged by demurrer.

I am therefore of the opinion that the trial court erred in not sustaining the plaintiff's demurrers to pleas 1 and 2, and that the case should be reversed and remanded.

The opinion of THOMAS, J., upon the original consideration of this case, and which he now adopts as his dissenting opinion, whether sound or not as to the legal questions there discussed, is not pertinent to the real issues presented by the record, and the conclusion heretofore reached in affirming the trial court, in holding that the pleas were good, is erroneous.

The application for rehearing is therefore granted, the judgment of affirmance set aside, the cause is reversed, the judgment of nonsuit is vacated, and the cause is remanded.

All the justices concur except THOMAS, J., who dissents.

THOMAS, J. (dissenting). The appeal was from a judgment of nonsuit made necessary by rulings of the trial court on pleadings. Code, § 3017; Herrmann v. Mobile Co., 202 Ala. 274, 80 South. 112.

The complaint was by William A. Wright, as Insurance Commissioner of the State of Georgia, and claimed of defendant the sums stated as due by a promissory note containing a waiver of exemptions, executed by defendant to the Empire Life Insurance Company, a corporation, for the purchase price of a certain number of shares of the capital stock of said company, for which certificate of stock was duly issued by that company in the name of defendant, and (it is averred) it was "not delivered to the defendant, but was retained as security for the payment of said note." It is further averred that "under the laws of the state of Georgia," as construed by its highest court, where a person subscribes for stock in a corporation, and the company incurs indebtedness after he became such subscriber, he cannot, after the insolvency of the company and the appointment of a receiver, obtain relief on the ground of fraudulent representations inducing the contract of subscription as against creditors of the company who became such subsequent to such contract of subscription by such stockholder. And plaintiff avers that at the time the business and affairs of said Life Insurance Company were so placed in his hands as Insurance Commissioner of the State of Georgia, as aforesaid, the said company was insolvent, and a large amount of such indebtedness, to wit, over $30,000, had been incurred after the date of said note and the date when defendant became a stockholder in said corporation, and before the said January 8, 1915, and a large part of said indebtedness, to wit, over $10,000, still remains unpaid.

The statutes of Georgia (Act August 19, 1912; Georgia Laws 1912, p. 119 et seq.) pertaining to the establishment of a department of insurance, and providing that the insurance commissioner shall supervise the con-

duct of such businesses, take possession of properties of insolvent insurance companies, and conduct the business on failure of statutory compliance, are pleaded. So is the order or decree of the court committing to the insurance commissioner the properties and business of the insolvent Empire Life Insurance Company. Among other provisions of the statute pleaded was the provision that the insurance commissioner may—

"apply to the circuit court or any judge thereof, in the judicial district in which the principal office of which such company is located, for an order directing such company to show cause why the commissioner should not take possession of its property and conduct its business, and for such other relief as the nature of the case, the interest of its policyholders, creditors, stockholders, or the public may require. On such application, or at any time thereafter, such court may, in its discretion, issue an injunction restraining such company from the transaction of its affairs or disposition of its property until the further order of the court. On the return of such order to show cause, the court shall hear, try, and determine the issues forthwith, and shall either deny the application, or direct the commissioner to take possession of the property, (1) conduct the business of such company, and *retain such possession and conduct such business* until on the application of either the commissioner, the Attorney General representing him, or such company, it shall, after a like hearing, appear to the court that the ground for such order directing the commissioner to take possession has been removed, and that the company can properly resume possession of its property and the conduct of its business. If on like application and order to show cause, and after like hearing, the court shall order the (2) *liquidation of the business* of such company, such liquidation shall be made by and under the direction of the commissioner, who may deal with the property and business of such company in his own name as commissioner, or in the name of the company, as the court may direct, and the commissioner shall be vested by operation of law with title to all the property, contracts, and rights of action of such company, as of the date of the order so directing him to liquidate." (Italics supplied.)

To defendant's special pleas demurrer was overruled. By this ruling a nonsuit was necessary and taken, and appeal prosecuted on the record. The pleas allege that defendant was induced to sign the note and enter into contract for the purchase of treasury stock of said corporation by fraudulent representations made to him by the selling agent of the company; that he had never received the stock, or participated in any meeting of the stockholders of the corporation, or done any act as a stockholder therein, or been an officer of the corporation, or received or accepted any benefits by reason of said stock; that the transaction took place on the 24th of May, 1914; that defendant did not learn of the fraud practiced on him

in the procurement of said contract until January, 1915, before the note became due, and after the affairs of the company were placed in plaintiff's hands as insurance commissioner, and that immediately he informed said commissioner of the fraud, and repudiated and rescinded the contract.

The difference between the two pleas is, in short, that defendant is averred to have purchased the treasury stock of the corporation in plea 1, and only to have contracted for its purchase in plea 2. Defendant averred in each plea that the execution of said note was procured and obtained from the defendant by the fraud, etc., of the said agent, servant or employé of the said company while so acting in the line or scope of his said employment, in this, etc.

Confessedly, plea 2 presents a good defense, though it be, as appellant contends, merely a traverse of the complaint. For if so, the court committed no error in overruling demurrer to such general issue so expressed. If defendant never was a stockholder, plaintiff cannot fasten liability on him. It has long been the law that where an agent, in selling personal property for a principal, makes guaranties, material representations, or agreements as an inducement for the sale, and suit is brought by the principal against the purchaser or conditional purchaser, the principal is bound by such guaranties, material representations, or agreements of such agent, made to induce the sale and relied upon by the purchaser. Capital Security Co. v. Owen, 196 Ala. 385, 387, 72 South. 8; Standard Motor Car Co. v. McMahon, 82 South. 188;[1] King v. Livingston Mfg. Co., 180 Ala. 118, 125, 60 South. 143; Mutual Loan Soc. v. Stowe, 15 Ala. App. 293, 73 South. 202. The purchaser or party contracting for the purchase of chattels has the right to rely on warranties or material representations made by the selling agent, in the assumption that such contracting party is representing the true facts, and is not called upon to examine the records in his own state, or of other states, or countries, to ascertain verification of such warranties or material representations of the seller. Greil Bros. Co. v. McLain, 197 Ala. 136, 140, 72 South. 410; Corry v. Sylvia y Cia, 192 Ala. 550, 558, 68 South. 891, Ann. Cas. 1917E, 1052; Hartley v. Frederick, 191 Ala. 175, 181, 67 South. 983; Ball v. Farley, Spear & Co., 81 Ala. 288, 292, 1 South. 253. Where the purchase was induced by fraud, it is not necessary to prove a fraudulent intent, for innocent acts or misrepresentations are sufficient to enable the buyer of corporate stock to recover or rescind (King v. Livingston Mfg. Co., 192 Ala. 269, 68 South. 897); or the purchaser to recover the purchase price (Harton v. Belcher, 195 Ala. 186, 70 South. 141). After discovery of the

[1] Ante, p. 158.

fraud, the purchaser or party contracting for the purchase is given a reasonable time within which to rescind or repudiate the contract because of such fraud. Standard Motor Car Co. v. McMahon, 82 South. 188;[1] King v. Livingston Mfg. Co., 180 Ala. 127, 60 South. 143; Comer v. Franklin, 169 Ala. 573, 577, 53 South. 797; Shahan v. Brown, 167 Ala. 534, 52 South. 737.

In plea one the averment was to the effect that the Empire Life Insurance Company, while it was a "going concern," and engaged in the business for which it was organized, issued a large amount of additional capital stock known as "treasury stock," which was prior to the execution of the note; that the agent of said company, while acting within the line or scope of his employment, sold to defendant, on May 24, 1914, in Montgomery, Ala., a part of said additional treasury stock; that defendant "bought said stock, and then and there executed and delivered the note here sued on in payment therefor; that the said stock, purchased as aforesaid, was held and retained by the company as collateral security for the payment of said note." It is also averred "that the transfer of said stock to defendant was never entered upon the books of said corporation." We may observe that there are substantial differences between subscriptions for and the issuance of "original stock" and subscriptions for the "increased or treasury stock" of a corporation. Baltimore City Pass. Ry. Co. v. Hambleton, 77 Md. 341, 346–348, 29 Atl. 279; 1 Cook on Corp. § 288. Speaking generally, a corporation's original or formative stock is such as is authorized and required by its charter to be issued to complete the organization of the body corporate; its treasury stock is that not required by law to be issued in consummation of incorporation, and there is no implied understanding that the whole of such authorized issue (of treasury stock) shall be subscribed or purchased. Gettysburg Nat. Bank v. Brown, 95 Md. 367, 52 Atl. 975, 93 Am. St. Rep. 339. So, also, such of the original stock in a corporation that has been purchased by it in the enforcement of its statutory lien thereon and against its stockholders becomes treasury stock. Walsh v. State ex rel. Cook, 74 South. 45, 49, 2 A. L. R. 551 (10);[2] Draper v. Blackwell, 138 Ala. 182, 35 South. 110; 6 Mayf. Dig. 209 (11). Pursuing this distinction further, it is recognized that, when a corporation is organizing, subscriptions to its capital stock (original stock) subjects the subscriber to responsibility for its price, and he becomes by the subscription its owner. Not being in default under the subscription, the subscriber is entitled to rights and subject to liabilities of a shareholder with respect to such stock. Baltimore City Pass. Ry.

Co. v. Hambleton, supra; Chester Glass Co. v. Dewey, 16 Mass. 94, 101, 8 Am. Dec. 128; Spear v. Crawford, 14 Wend. (N. Y.) 20, 24, 28 Am. Dec. 513; Sturges v. Stetson, 1 Biss. 246, 251, 254, Fed. Cas. No. 13,-568; Chaffin v. Cummings, 37 Me. 76, 82, 83; 1 Morawetz on Corp. (2d Ed.) § 61. Where an organized corporation is authorized to increase its capital stock and does so increase by treasury stock, by the mere subscription therefor the subscriber does not become a stockholder, and it does not entitle him to a certificate, since payment for the same is necessary to constitute such subscriber the owner thereof and a stockholder in the corporation. It has been held in other jurisdictions that the "subscription is but the contract; payment, when collected by the company and when made by the subscriber, constitutes him a shareholder whether a certificate has been issued or not." St. Paul, etc., Co. v. Robbins, 23 Minn. 439; Pac. Nat. Bank v. Eaton, 141 U. S. 234, 11 Sup. Ct. 984, 35 L. Ed. 702; Jay Gould v. Town of Oneonta, 71 N. Y. 298; Johnson v. Albany, etc., Co., 54 N. Y. 416, 13 Am. Rep. 607; Gettysburg Nat. Bank v. Brown, supra (95 Md. 375, 52 Atl. 975, 93 Am. St. Rep. 339); Baltimore, etc., v. Hambleton, supra (77 Md. 348, 29 Atl. 279).

The interesting question as to when one becomes a member of an incorporation has been the subject of discussion by text-writers and courts. Mr. Morawetz, in his work on Private Corporations, vol. 1 (2d Ed.) §§ 45, 159, says one may become a member of an incorporated association either by an original contract with the other members, or by substitution in the place of an existing member through a transfer of his shares; in which latter case, by the doctrine of novation, the transferee becomes a party to the contract of incorporation, and the member whose shares he takes is discharged. An important distinction is made "between the contract of membership actually existing between the shareholders or members of a corporation and a contract to become a shareholder at a future time, * * * a contract to become a shareholder at a future time must again be distinguished from a contract to purchase shares which have already been issued." The contract between the members of a corporation gives the full status of shareholders, invests them with the continuing rights of shareholders, and subjects to corresponding liabilities; and a contract to become a shareholder at a future day "does not give the contracting party the status of shareholder until after the contract has been fully executed by taking the shares or actually subscribing upon the books"; the breach of such contract subjecting the party contracting to become a shareholder to liability to the corporation for the damages sustained by the breach for

[1] Ante, p. 158.   [2] 199 Ala. 123.

the difference between the amount agreed to be paid and "the value of an equal number of shares in the market." Morawetz on Private Corporations, vol. 1 (2d Ed.) § 46.

This important difference between subscriptions and sales of shares is declared generally in Morawetz on Private Corporations, vol. 1 (2d Ed.) § 60. He says: "It has been held that a subscription for shares made after the organization of a corporation does not become binding, or constitute the subscriber a shareholder, until it has been accepted by the company through its proper agents" (Parker v. Northern Central & C. R. Co., 33 Mich. 23; Northern Central Mich. R. Co. v. Eslow, 40 Mich. 222); the test being, as stated in Ang. & A. on Corporations, §§ 523, 527, "whether any act has been done by which the corporation has been forced to receive the subscriber"; of which Mr. Justice Campbell (Mr. Justice Cooley concurring) observes that "this is the accepted doctrine everywhere." Carlisle v. Saginaw Valley & St. L. R. Co., 27 Mich. 315, 319.

Mr. Morawetz (Private Corporations, vol. 1 [2d Ed.] § 61) differentiates sales of shares in a corporation from subscriptions therefor, as follows:

"The *issue* of new shares by a corporation may take the form either of a sale and *purchase of the shares* or of an ordinary subscription. There is an important difference between the two classes of contracts. When a person agrees 'to take' or 'to purchase' shares, the intention is to *buy the certificates* representing the shares as *salable securities*. In this case, therefore, the *delivery* of the certificates and the *payment* of the amount of the shares are intended by the parties *to be concurrent acts;* and, upon a failure to carry out the contract, neither party can charge the other without averring a tender of performance. Clark v. Continental Improvement Co., 57 Ind. 135, 138; Weiss v. Mauch Chunk Iron Co., 58 Pa. 295, 301; Quick v. Lemon, 105 Ill. 578. As the purchaser does not become a shareholder until he has received the certificates, a breach of the agreement will render him liable only to the extent of the damages which the company has actually suffered. Thrasher v. Pike County R. R. Co., 25 Ill. 395, 405. On the other hand, the effect of an ordinary subscription is to constitute the subscriber a shareholder immediately, with the right to vote at meetings and share in dividends, and subject to a liability to contribute the amount of the shares when called upon or assessed by the directors. The subscriber, upon becoming a shareholder, would in each case be invested with the resulting rights and liabilities. The delivery or tender of a certificate of shares is never a condition precedent to the liability of a shareholder to contribute the amount of his shares after a proper call has been made. In St. Paul, S. & T. R. Co. v. Robbins, 23 Minn. 439, 441, an agreement, purporting on its face to be a subscription for shares in a corporation already organized, was construed by the court as *an agreement to buy certificates of shares*, and it was held that the delivery of the certificates and payment of the purchase price should be concurrent acts." (Italics supplied.)

In the Robbins Case, supra, Mr. Chief Justice Gilfillan, delivering the opinion of the court, said:

"It appears from the complaint that, at the time of this subscription, the company was fully organized, so that it does not stand upon precisely the same footing as a subscription made prior to, and for the purpose of effecting, the organization. Such a subscription gives to the subscriber an interest in the corporation, and the right to take part in organizing it, and this interest and right are a sufficient consideration to support his promise. But the subscription in this case does not appear to have been to the original stock; on the contrary, it appears that, after the company was fully organized, its board of directors authorized and directed the issuance of what, in the amended complaint, is called 'preferred capital stock,' and also directed that the company's books should be opened to receive subscriptions for the same. The *mere subscription to this stock*, while it constitutes a valid contract on the part of the company to issue the stock to defendant *upon his paying for it, and, on his part, to receive and pay for it, does not give him an interest in the company, nor vest in him the title to the stock.* It can be sustained as a contract only on the implied promise of the company to issue the stock to him. * * * We regard the two promises as concurrent and dependent, and that neither party could require the other to perform without performing, or offering to perform, the promise on his part. As plaintiff has neither issued the stock, nor offered to issue it, the action is prematurely brought." (Italics supplied.)

The difference between subscriptions for stock in corporations and executory agreements for its purchase in the future has been recognized in this jurisdiction of defendant's residence and where the contract was entered into. Minge v. Clark, 190 Ala. 388, 67 South. 510; Beitman v. Steiner Bros., 98 Ala. 241, 13 South. 87; Williams v. Evans, 87 Ala. 725, 726, 6 South. 702, 6 L. R. A. 218. The same distinction was made by the Georgia court in Fulgam v. Macon, etc., Co., 44 Ga. 597, 598, this state being the domicile of the corporation, the stock of which was the subject of the executory contract on which the suit was sought to be maintained. The agreement was to pay the railroad company the amount set opposite the respective names of the signers of the instrument, the condition or consideration of the subscription being that the subscribers were to receive the stock theretofore subscribed and unpaid by certain citizens of Hawkinsville. The company sued Fulgam on the paper for the amount set opposite his signature, averring that it had demanded the money, his refusal, etc. The defense was that the delivery of the stock

certificate was a precedent to the demand. The court said:

"We think the plaintiff in error was, as was charged by the judge, liable to suit on his refusal to pay. He had subscribed the stock, and he was not entitled to a certificate of stock until his subscription was paid. It was argued that a subscription for stock stands on the same footing as a contract of purchase; that the company, like the vendor, must offer to deliver before he can demand the price. Is this so? We think not. Whenever the subscriber pays, he is the owner of stock in the company. It is the payment that makes him the stockholder. The certificate of stock is only the evidence of his right. He would be a full stockholder, with all the rights of one, if the certificate was not issued at all. The case is wholly different from the instance of a sale of stock; that may, and perhaps does, stand in the same footing of other sales."

Is not the instant suit on the agreement to purchase the stock in question at a future date the—date of the note? Such stock did not become the property of the contracting purchaser, nor did such person become a stockholder in the corporation until the payment of its purchase price was made. Thus the suit is not on any liability that a stockholder (as such) may have incurred or be subjected to, as assessments, charter liabilities, or other liability stockholders are subject to by the rules and regulations of the corporation. Many cases were adverted to by counsel wherein suits were to enforce a liability incurred by or occurring after becoming a stockholder and by virtue of being a shareholder in the corporation. Such is not the case here—merely a suit on defendant's note given on his subscription for treasury stock of a corporation, to be completed by its payment therefor—a condition precedent to such subscriber becoming a stockholder; and by a delivery of the stock or exercise of the rights of a stockholder. Fulgam v. Macon, etc., Co., supra. He gave the note to the corporation for the treasury stock, in return for its promise on payment to deliver the stock, and at that time to vest him with the rights of a shareholder. Not until then was he to be vested with such privileges or subject to liability as a stockholder. He cannot be denied the rights of a shareholder, and at the same time be subject to its liabilities. The corporation, becoming insolvent, was committed by judicial decree to plaintiff insurance commissioner before the due date of the note; on that date no treasury stock in the liquidating corporation could have been delivered, or defendant accorded any privileges of a stockholder. If defendant had purchased any other of the personal properties of the Empire Life Insurance Company, and was induced to that purchase and the giving of the note by fraudulent representations or warranties of the corporation's selling agent, such contract of purchase, by the law of this state, is subject to a seasonable disaffirmance because of such fraud, and recovery may be had of any portion of the purchase price paid, or successful defense may be made to the collection of purchase money note on the ground of such fraud. Capital Securities Co. v. Gilmer, 190 Ala. 340, 67 South. 258, Ann. Cas. 1917A, 888; Capital Sec. Co. v. Owen, supra; King v. Livingston Mfg. Co., 192 Ala. 369, 68 South. 897; Ala. Fdy. & Mach. Wks. v. Dallas, 127 Ala. 513, 29 South. 459. It is noted of these Alabama cases that the controverted questions of fact were between defrauded stockholders and the corporations or directors thereof; that no question was presented of a paramount right of creditors contracting with the corporations subsequent to the contract or subscription for the stock on which disaffirmance for fraud was sought. In Alabama Foundry & Machine Works v. Dallas, supra, the holding was that—

"In an action by a corporation upon a promissory note given by defendant for the subscription to the capital stock of the plaintiff, where it is shown that the president and general manager of the plaintiff corporation at the date of the execution of the note sued on, and for the purpose of increasing his subscription, made fraudulent representations to the defendant as to who were the stockholders in said corporation, and regarding the value of the property owned by said corporation, and that the defendant relied upon such representations, and by reason thereof was induced to subscribe for the stock, and to execute the note sued on, the plaintiff is not entitled to recover, but upon issue joined upon the proper pleadings, the defendant is entitled to judgment.

Such is the law of this state.

Under the facts detailed in the complaint and pleas, is the case fundamentally different, because of intervening rights of creditors whose indebtedness had been incurred subsequent to the time of the execution of the note for the treasury stock? The defense of fraud presented by the pleas is sought to be avoided by plaintiff's insistence that such a special or equitable right of subsequent creditors had intervened, estopping defendant from pleading the fraud inducing the subscription or purchase of the stock.

We have noted a difference in the accruing rights and attaching liabilities of subscribers to the purchases of original stock and such rights and liabilities of subscribers for purchases of treasury stock in corporations. Does the reason for the rule of the special equity, obtaining in behalf of subsequent creditors and against purchasers or subscribers of original or foundation stock of corporations, cease to exist when there is an executory contract for the purchase of treasury stock?

Appellee's counsel urges that the rule does not exist in favor of such subsequent credi-

203 Ala.—28

tors. He says: Suppose a corporation by its fraud, or a person by his fraud, procured from A. an advantageous contract. People thereafter dealt with such corporation, or person, and loaned credit. Would it be seriously contended that, because there were "subsequent creditors," A. must submit to the fraud and was without remedy? Is it not by such process of reasoning that defendant is sought to be held? Unquestionably this is a full answer and sufficient reason for sustaining demurrer to plea 2.

Was the contract for the purchase of treasury stock of the Georgia corporation, and the giving of the note in question, a contract to be governed by the law of Georgia? If so, was the defense presented by the pleas a full answer to the complaint? It has been held by the federal courts that a subscription for original stock subjects the subscriber to liability for unpaid installments thereon, without an express promise to pay them; that is, if such liability is the law of the domicile of the corporation. Upton v. Tribilcock, 91 U. S. 45, 23 L. Ed. 203; Hawley v. Upton, 102 U. S. 314, 26 L. Ed. 179; Bernheimer v. Converse, 206 U. S. 516, 27 Sup. Ct. 755, 51 L. Ed. 1163. Such is the holding in this court. Beene v. Cahawba, etc., Co., 3 Ala. 660; Harris v. Gateway Land Co., 128 Ala. 652, 29 South. 611. And the text-books state the same rule. 1 Cook on Corp. (6th Ed.) § 192; 1 Thompson on Corp. (2d Ed.) §§ 547, 548, 550, 553, 556; 2 Clark & Marshall on Priv. Corp. §§ 378, 462d; 10 Cyc. 380, 389.

Appellant finds no support in the observations in Bernheimer v. Converse, supra, as to the shareholders' liability under the organic law of Minnesota, for an amount equal "to the amount of stock held or owned by him" in a corporation not of the excepted class—those organized for the purpose of carrying on any kind of manufacturing or mechanical business (Const. of Minn. § 3, art. 10)—for the significant reason that the court was discussing the liability of an original subscriber for stock and the liability of a stockholder, not the liability of one contracting to purchase treasury stock and not having become a stockholder. The justice, it is true, observes:

"Nor can we see any substantial difference in this respect between a liability to be ascertained for the benefit of creditors upon a stock subscription and the liability for the same purpose which is entailed by becoming a member of a corporation through the purchase of stock whereby a contract is implied in favor of creditors. The object of the enforcement of both liabilities is for the benefit of creditors, and while it is true that one promise is directly to the corporation, and the other does not belong to the corporation but is for the benefit of its creditors, either liability may be enforced through a receiver acting for the benefit of creditors under the orders of a court in winding up the corporation in case of its insolvency.

* * * By becoming a member of a Minnesota corporation, and assuming the liability attaching to such membership, he became subject to such regulations as the state might lawfully make to render the liability effectual."

Thus the federal courts have declared, of the liability of a stockholder of a corporation, that it is determined by the laws of the state in which the corporation is organized and domiciled, and not by the laws of the state in which the stockholder is domiciled. Bernheimer v. Converse, supra, 206 U. S. 533, 27 Sup. Ct. 755, 51 L. Ed. 1163; Nashua Sav. Bank v. Anglo-American Co., 189 U. S. 221, 230, 23 Sup. Ct. 517, 47 L. Ed. 782; Glenn v. Liggett, 135 U. S. 533, 544, 10 Sup. Ct. 867, 34 L. Ed. 262; Hawkins v. Glenn, 131 U. S. 319, 332, 9 Sup. Ct. 739, 33 L. Ed. 184; Canada So. Ry. Co. v. Gebhard, 109 U. S. 527, 538, 3 Sup. Ct. 363, 27 L. Ed. 1020; Relfe v. Rundle, 103 U. S. 222, 226, 26 L. Ed. 337.

Appellee's counsel, however, insists that the liability for a subscription to treasury stock of the corporation is not different in the state of Georgia, where said corporation has its legal existence, from that in the state of Alabama, where the contract was entered into, and the vitiating fraud operated to defendant's prejudice.

Deferring a general discussion of the Georgia decisions for the moment, we may consider the announcement of the text-writer as to the relation of receivers of the corporation to its creditors and to other parties. Mr. High on Receivers says:

"Since the appointment of a receiver in limine does not affect any questions of right involved in the action, and does not change any contract relations or rights of action existing between parties, it follows, as a general rule, that in ordinary actions brought by a receiver in his official capacity, to recover upon an obligation or demand due to the person or estate which has passed under the receiver's control, the defendant may avail himself of any matter of defense which he might have urged had the action been brought by the original party instead of by his receiver." High on Receivers (4th Ed.) § 245, p. 286.

This is on authority (among other decisions to which we will advert hereafter) of Moise v. Chapman, 24 Ga. 249, 250, 251. In a subsequent section of his work Mr. High says:

"While the receiver of an insolvent corporation is thus treated as the representative of both creditors and shareholders so far as any beneficial interest is concerned, yet, for the purpose of determining the nature and extent of his title, he is regarded as representing only the corporate body itself, and not its creditors or shareholders, being vested by law with the estate of the corporation, and deriving his own title under and through it. For purposes of litigation, therefore, he takes only the rights of the corporation, such as could be asserted in

its own name, and upon that basis only can he litigate for the benefit of either shareholders or creditors, except when acts have been done in fraud of the rights of the latter, but which are valid as against the corporation itself, in which case he holds adversely to the corporation. § 315, p. 386.

This text is well supported by authority and by the leading case of Curtis v. Leavitt, Recr., 15 N. Y. 9, 44, 45, where Mr. Justice Comstock said:

"The appellant, as receiver, has no interest in or power over the property affected by the trusts in question, except such as he derives under the statutes which have been mentioned. It has been said in this, as in other, cases, that he represents the creditors and the stockholders; but, for all the purposes of inquiry into his title, he really represents the corporation. He is by law vested with the estate of the corporate body, and takes his title under and through it. It is true, indeed, that he is declared to be a trustee for creditors and stockholders; but this only proves that they are the beneficiaries of the fund in his hands, without indicating the source of his title or the extent of his powers. If, then, in a controversy between the receiver and third parties, in respect to the corporate estate, it is possible to form a conception of rights, legal or equitable, belonging to the shareholders as individuals, which the corporation itself could not assert in its own name, the receiver does not represent those rights. So far as shareholders are concerned, he can litigate respecting the fund upon precisely the grounds which would be available to the corporation, if it were still in existence, solvent, and no receivership had been constituted. In regard to creditors, I should certainly incline to take the same view of his rights and powers under the statutes referred to. It has, however, been uniformly assumed, and was not denied on the argument, that he succeeds to the rights of creditors, and takes his title under them, where conveyances have been made in fraud of their rights, but otherwise valid. In such cases he holds adversely to the debtor corporation. For all the purposes of the present controversy I shall proceed upon this assumption. In general, then, a receiver of this description takes merely the rights of the corporation, such as could be asserted in its own name, and on that basis only can he litigate for the benefit of either stockholders or creditors, except when acts have been done in fraud of the rights of the latter, but valid as to the corporation itself."

Mr. High's text is also supported by Voorhees v. Ind. Car. etc., Co., 140 Ind. 220, 239, 39 N. E. 738, 744, where it is declared that for the purposes of litigation the receiver of an insolvent corporation "takes only the rights of the corporation, such as could be asserted in its own name, and upon that basis only can he litigate for the benefit of either shareholders or creditors, except where acts have been done in fraud of the rights of the latter, but which are valid as against the corporation itself, in which case he holds adversely to the corporation." And

in Alexander v. Relfe, 74 Mo. 495, 516, Mr. Chief Justice Sherwood announced that a receiver appointed under the insurance law to liquidate the affairs of an insolvent insurance company represents both the creditors and the stockholders of the company, and is to be regarded as the trustee for them; and that, where acts have been done by the corporation in fraud of the rights of creditors, "he may litigate for their benefit, though the act in question be valid as to the corporation itself; in which case he holds adversely to the corporation. High on Receivers, § 315, and cases cited."

Mr. Beach on Receivers (Alderson's Edition) § 639, says of the title of receivers:

"It is a well-established rule of law that, as to all the property and rights of property of the judgment debtor, and as to all lawful transactions with his property and rights of property, the receiver stands only in the place of the judgment debtor, and has no rights in respect thereto which the latter did not have. Atkinson v. Foster, 27 Ill. App. 63. But as to property which the judgment debtor has transferred or disposed of in fraud of the creditor in whose behalf the receiver was appointed, such receiver acquires more than the property and rights of property which the judgment debtor owned at the date of the appointment, namely, the right to impeach these transfers and dispositions of property for fraud, and to have them set aside, and the property delivered or accounted for to him by the fraudulent transferee. Dunham v. Byrnes, 36 Minn. 106 [30 N. W. 402]; Mandeville v. Avery, 124 N. Y. 376 [26 N. E. 951, 21 Am. St. Rep. 678]; Stephens v. Perrine, 143 N. Y. 476 [39 N. E. 11]; Hedges v. Polhemus [9 Misc. Rep. 680], 30 N. Y. S. 556."

On suits by receivers for subscriptions to the capital stock of insolvent corporations, the text of Wait on Insolvent Corporations, § 235, is as follows:

"Generally speaking, a receiver cannot compel payment of a subscription that the corporation could not have enforced at the time of his appointment. Cutting v. Damerel, 88 N. Y. 410; Billings v. Robinson, 28 Hun (N. Y.) 122. The receiver of an insolvent corporation may bring separate suits against the several stockholders to recover any sum remaining due upon their shares of stock. If the corporation has instituted suit for an unpaid subscription, the receiver may continue the action in the name of the original plaintiff. Phœnix Warehousing Co. v. Badger, 67 N. Y. 294."

The declared rule in 3 Clark and Marshall on Priv. Corp. § 799a, p. 2464, is that when creditors of a (insolvent) corporation sue in equity to reach and subject unpaid subscriptions for stock to the payment of their claims brought in the name of all who may come in, in liquidating its assets, including unpaid subscriptions as a trust fund for the benefit of all its creditors, "the decree making the call will, according to the weight of authority, be binding on all the stockholders, whether they are themselves

parties to the suit or not, since they are represented by the corporation; and, when authorized by the court, the receiver, in most jurisdictions by express statutory provision, and in others without any statutory provision, may maintain actions at law, or, in a proper case, a suit in equity, in his own name, against the stockholders to recover, what may be due." Lehman, Durr & Co. v. Glenn, 87 Ala. 618, 627, 6 South. 44; Semple v. Glenn, 91 Ala. 245, 6 South. 46. And (page 2467) the author further observes:

"According to the weight of authority, a judgment against a corporation determining the amount of its indebtedness and of its assets, and directing an assessment on its stockholders for the purpose of paying debts, is binding and conclusive upon all the stockholders in suits brought against them to recover their proportion of the assessment, unless they can show want of jurisdiction, or fraud or collusion. It can make no difference that they are not themselves parties to the suit in which the judgment is rendered, for they are represented therein by the corporation. And the principle applies to stockholders who are residents of other states as well as to resident stockholders. The rule does not apply, however, when a statute expressly requires that the stockholders shall be made parties to the suit. As a rule, a receiver cannot enforce a subscription unless it could have been enforced by the corporation. Moise v. Chapman, supra; Cutting v. Damerel, supra; Billings v. Robinson, supra; Winters v. Armstrong (C. C.) 37 Fed. 508; Republic Life Ins. Co. v. Swigert, 135 Ill. 150 [25 N. E. 680, 12 L. R. A. 328]; Great Western Tel. Co. v. Loewenthal, 154 Ill. 261 [40 N. E. 318]. But the receiver represents creditors, as well as the corporation, and may enforce an equitable right of creditors to have subscriptions paid, as in the case of watered or fictitiously paid up stock, or subscriptions released by the corporation in fraud of the rights of creditors, although the corporation would have no right to enforce the same."

We now advert to the declared rules of the Georgia court as to the rights and liabilities of stockholders and creditors of insolvent corporations and subscribers to the capital stock therein as may be affected by the subsequent rights of creditors. We have noted that Fulgam v. Macon, etc., Co., supra, held that the subscriber to stock in the corporation was not entitled to a certificate of stock or to the rights of a stockholder until such subscription was paid, and that the payment of same constituted the subscriber a stockholder, not the issue of the certificate of stock, which was only the evidence of his right. The justice propounds the inquiry as to whether the company was competent to issue the sort of stock claimed by defendant —whether a peculiar kind of stock, with a special guarantee, was a matter of defense, the burden of proving such fact resting on defendant. The stock subscription in question was an agreement to pay the Macon & Brunswick Railroad Company the amount set

opposite the respective names of the subscribers.

In Moise v. Chapman, supra, the justice states the rule of defense on the part of a stockholder against a receiver of an insolvent corporation as follows:

"The court below told the jury that the defendant was 'entitled, by the act of 1832, to pay his draft in the bills of the bank.' Was the court right in telling them this? Counsel for the plaintiff in error say no. They say, first, that even if the defendant would be entitled to pay the draft, in the bills of the bank, to the *bank itself*, he is not entitled to do this to the *receiver*. But Lord Hardwicke, in Skip v. Harwood, 3 Atkyns, 564, 565, says that the appointment of a receiver 'does not at all affect the right.' Stor. Eq. Jur. § 831. And so great an authority as Lord Hardwicke may be safely followed in a statement so reasonable. *It follows, then, that any defense which might have been made by the defendant against the bank may be made by him against the receiver.*" (Italics supplied.)

In Howard v. Glenn, 85 Ga. 238, 11 S. E. 610, 21 Am. St. Rep. 156, the defendant was an original incorporator, and it was held that—

"whether Howard became a stockholder in this company by subscription which was induced by fraud practiced upon him, or not, *if he did become a stockholder in said company*, he is liable to the creditors of the company for so much of his unpaid stock as might be necessary to pay the company's debts, taken in connection with the other corporators of the company." (Italics supplied.)

The recovery had in Allen v. Grant, Trustee, 122 Ga. 552, 50 S. E. 494, was by a trustee in bankruptcy against original incorporators of the Allen-Miles Company, a Georgia corporation. Said company was chartered by the superior court of Fulton county on October 16, 1902, and on October 28th thereafter said defendant incorporators met, accepted the charter, opened the books, and made the subscriptions in question.

In Spratling v. Westbrook, 140 Ga. 625, 79 S. E. 536, a suit by a trustee in bankruptcy of an insolvent corporation on "equitable petition" for the enforcement of unpaid stock subscriptions made on organization of said corporation, the observations of the justice, that it is everywhere well recognized that unpaid subscriptions to the capital stock of the corporation constitute part of its assets, and are largely the basis of credit of the corporation, and that persons dealing with the corporation have the right to look to the authorized capital stock as a fund for the payment of their debts, are not conclusive of the instant suit at law. It is clear from an inspection of the special contract entered into between Spratling and the motor car company that no certificate was to be issued to Spratling for 25 shares of the original stock

for which he had subscribed, and this did not prevent him from becoming a stockholder of the whole 50 shares, the amount of his original subscription, nor was he relieved from liability, as such original or foundation stockholder, for the full amount of his subscription.

In Gress v. Knight, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900, the statement of fact by Mr. Justice Lumpkin shows that the bank of Waycross had an authorized capital stock for $50,000, of which $25,000 had been issued and fully paid up. The capital stock was increased to $150,000. "All of this was sold to or divided among the original stockholders, except about 250 shares, of the par value of $100 per share. These shares were sold to new stockholders, including the interveners. False and fraudulent representations were made by the bank," each intervention stating those on which the intervener relied." The rule of subordination of rights of intervener to that of intervening subsequent creditors was announced as quoted with approval by Mr. Justice Evans in Empire Life Insurance Co. v. Brown, infra. In Turner v. Grangers' etc., Co., 65 Ga. 649, 651, 652, 38 Am. Rep. 801, it was held that to the extent plaintiff became a shareholder in the Alabama corporation, it appearing on the trial that there were debts subsequently incurred by the company in excess of the payment of $250 cash for and on his subscription, he could not recover, in his proceeding by attachment, the amount of said cash payment. The court expressly reserved the question of the right to relief from such fraud to the extent that the contract remained executory under the terms of the subscription. Of this Mr. Justice Hawkins said: "We do not say but in a proper case the plaintiff could assert the fraudulent representations to avoid his subscription; but we decide that, as to subsequent creditors in this attachment proceeding, he cannot defend against the corporation as to creditors becoming such after his subscription"; meaning for the recovery of the $250 paid into the treasury of the company.

In Empire Life Ins. Co. v. Brown, 145 Ga. 818, 89 S. E. 1085, 1086, the petitioner had received his original stock in the old company chartered November 10, 1900, exchanged it for stock in the new company of like name chartered March 6, 1911, upon a capital stock plan, the exchange being consummated by the surrender of the old stock and delivery of the new stock. The justice says:

"After receiving his stock he deposited it in a safety deposit vault in a bank in Atlanta, which is about 45 miles away from his home, feeling assured that the stock was of the par value of $100, as represented. A few weeks prior to the filing of the suit [which was for receiver, etc.] he received information that the stock certificates were only of the par value of $20, and upon examination of his stock certificate he found this information to be true. * * * If the Empire Life Insurance Company was solvent, or if the plaintiff's relief could be obtained without loss to subsequent creditors of the corporation, the case would fall under the general rule that contracts obtained by fraud may be avoided by the party defrauded. But the petition alleged that the company was insolvent, and sought to have its affairs administered by the court. Though a subscription to stock may have been induced by fraud, the subscriber cannot recover the amount paid by him, if there be creditors to an equal or larger amount on debts contracted after his subscription. Turner v. Grangers' Insurance Co., 65 Ga. 649, 38 Am. Rep. 801. It was held in Gress v. Knight, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900, 904:

"'If a person subscribes for stock in a corporation, and thereupon the company proceeds to do business upon the basis of the stock subscribed, and incurs indebtedness, the subscriber cannot, after insolvency of the company and the appointment of a receiver, obtain relief on the ground of fraudulent representations of the agents of the company in securing his subscription, as against creditors thus obtaining rights, or a receiver representing them.'

"Petitioner alleges that at the time he purchased the stock the company had not begun business. He further alleges that the company began business before its capital stock was paid in, contracted indebtedness, some of which is secured by mortgage, and was insolvent at the time he brought his suit. Under these allegations the petitioner's right to rescind and recover the price paid for his stock is subservient to the rights of creditors to be paid out of the assets of the insolvent corporation."

Do not these cases make a distinction between the right of rescission of subscription for stock by a foundation stockholder and rescission of an executory contract for the purchase of the treasury stock of a corporation?

In the decision of McKey v. Wright, 147 Ga. 662, 95 S. E. 217, 219, the petition of Brown and others, in Fulton county, Ga., against the Empire Life Insurance Company, prayed for injunction, receiver, and other equitable relief against the defendant. The bill, and the various amendments thereof, were consolidated with the suit of William A. Wright, as Insurance Commissioner of the State of Georgia, praying "that the affairs of the said defendant insurance company be placed in his charge under the laws of Georgia." Thereafter the insurance commissioner filed in the consolidated cause a petition against the defendants as well as the Empire Life Insurance Company to collect certain notes given for stock subscriptions, among which defendants was W. V. McKey, whose residence was alleged to be in Lowndes county, Ga. This defendant filed a general demurrer to the petition, challenging the jurisdiction of the court to proceed against him without his county, against his expressed objection. The holding was that where the comptroller gen-

eral, as insurance commissioner of the state, had been placed in charge of the affairs of such insolvent insurance company, and it is necessary for the benefit of creditors to collect the unpaid subscriptions to the capital stock thereof, the commissioner may proceed in one suit against all of those who owe for unpaid stock subscriptions, "and where the suit is properly brought as an equitable action, in a county of the residence of some of the defendants against whom substantial relief is prayed, others of the same class may be joined, although they are not residents of that county." This ruling was declared by the court to dispose of the controlling question in the case. That it was a question of venue is shown by this announcement of the court to this effect:

"It was competent for the court to entertain a petition brought against the defendants on the notes given for subscriptions to stock, whether they resided in Fulton county or in some other county in the state. We are of the opinion that this suit was one brought for, and in the interest of, creditors."

Thus was dealt with the question of venue as to the Georgia subscriber to the capital stock of the Empire Life Insurance Company, and was not undertaking to exercise an extraterritorial jurisdiction of executory contracts for the purchase of treasury stock beyond the confines of the state of Georgia. These last cases by the Georgia court were subsequent to making of contract in question.

It may be instructive, as well as interesting, to note the rulings of other courts on this important question. In Florida Land & Imp. Co. v. Merrill [52 Fed. 77], 2 C. C. A. 629, 632, a tract of land had been sold at an agreed price, a portion to be paid in cash and the balance to be secured by mortgage. Subsequently the vendor was induced, by false representations in regard to the solvency of a bank, to accept its stock as part payment of the balance of the purchase price. Soon after this transaction the bank was declared insolvent and a receiver appointed. Held that, the bank being the real vendor of the stock, the vendor of the land was entitled to a complete rescission of the fraudulent sale of the stock, without regard to rights of its other creditors. The distinction is there made that the transaction was—

"Not a case of subscription to the capital stock of an incorporated company, nor a case of transfer of stock by an ordinary stockholder, but it is a case where the bank, as an actor, made a fraudulent sale of its own stock, and now, by its receiver, holds the proceeds thus acquired. In other words, the receiver of the bank holds property that does not belong to the bank, to which neither he as receiver nor the creditors of the bank are entitled in equity and good conscience." (Italics supplied.)

The Supreme Court of Michigan (Duffield v. E. T. Barnum Wire & Iron Works, 64 Mich.

293, 301, 305, 306, 307, 31 N. W. 310) propounds the question whether one who buys stock of a corporation, attends stockholders' meetings, votes to increase the capital stock, votes and receives dividends, and does nothing to repudiate or rescind the contract for six months, is estopped by his conduct and laches from rescinding his contract of subscription on the ground of fraud by the corporation securing it, after the corporation has become insolvent, as against creditors of the corporation who became such after he became a subscriber and before the contract is rescinded. In affirming the judgment of the lower court the justice said:

"The rule that fraud vitiates all contracts, at the option of the person defrauded, applies as well to stock subscriptions in a corporation as to other contracts. Vreeland v. New Jersey Stone Co., 29 N. J. Eq. 188. Contracts induced by fraud are not void, but voidable, and the injured party has a right to have them abrogated. Relief can be had either at law or in equity, but will not be granted where the subscriber has been guilty of negligence in informing himself of the actual facts, or where, in consequence of his delay in repudiating the contract, innocent third parties, either shareholders or creditors, have acquired rights which would be prejudiced by its rescission. Thomp. Liab. Stockh. § 142. And it makes no difference in what aspect the question is raised—whether the subscriber who has paid for his stock repudiates the contract on the ground of fraud, and sues to recover it back, or the subscriber is sued for unpaid subscription, and defends on the ground of fraud. In either case, if the stock subscriber has been negligent in informing himself of the actual facts, or if, in consequence of his apparent relations with the corporation as a stock subscriber, innocent third parties have acquired rights upon the faith of such relation which would be prejudiced by his rescission, he will be held as a subscriber, and will not be allowed, in the one case, to withdraw the capital which he has paid in, or, in the other, to escape payment. Ogilvie v. Knox Ins. Co., 22 How. 380 [16 L. Ed. 349]; Upton v. Tribilcock, 91 U. S. 45 [23 L. Ed. 203]; Chubb v. Upton, 95 U. S. 667 [24 L. Ed. 523]; Payson v. Withers, 5 Biss. 269 [Fed. Cas. No. 10864]."

Mr. Justice Sherwood concurred with Mr. Chief Justice Campbell's dissent to the effect that the fraud charged by plaintiff was sufficiently shown, and there was no estoppel against defendant's pleading the fraud in bar of collection of said subscriptions. Judge Campbell said:

"It is not questionable that, where such a fraud has been committed by a corporation, the stock may be repudiated, and suit brought for the consideration, or case brought for damages. Upon this there is no conflict; and unless, by reason of subsequent waiver, the party injured has lost his action, he can recover. * * * There is no ground in reason, and very little, if any, in authority, which makes mere delay much longer than this fatal to an action, if the fraud is not discovered. Neither is there

any ground for holding a person to have lost his remedy by acting, until such discovery, in the same way as any other stockholder. That a stockholder should not culpably shut his· eyes when informed of essential facts is, of course, true. But he is not culpable or negligent unless he omits to discover what he ought to have discovered, and the law requires nothing which is unreasonable. * * * The question seems to be narrowed to the inquiry whether plaintiff is deprived of his remedy by the subsequent assignment. If there was no fault in not discovering the wrong, and if the suit was brought before any opposing claims had obtained a preference, it cannot be said there was any waiver, and·it is difficult to see anything which can be treated as an estoppel."

In line with this pronouncement of Mr. Chief Justice Campbell, many cases are reviewed by the editors in notes to Gress, Interveners, v. Knight et al., supra, to the effect that though the established rule in England is that all relief from subscriptions to stock upon the ground of fraud is cut off by the insolvency of the corporation, yet the great weight of American authority has proceeded upon the principle that to entitle a subscriber to relief, after the insolvency of the corporation and the consequent—

"intervention of the rights of creditors, upon the ground that his subscription was induced by false and fraudulent representations, he must have acted promptly, and with reasonable diligence repudiated his contract upon discovering the fraud, and not have permitted himself to do any acts inconsistent with an intention to repudiate, such as receiving dividends or taking part in the proceedings of the corporation; otherwise he will not be able to escape his liability as a stockholder."

In Marion Trust Co. v. Blish, 170 Ind. 686, 84 N. E. 814, 85 N. E. 344, 18 L. R. A. (N. S.) 347, and notes thereto, the right of a subscriber, in an action by a corporate receiver to recover the balance of an unpaid stock subscription, to interpose a defense available against the corporation if suing, is discussed and authorities collected. It is admitted that there is conflict among the decisions as to the right of a subscriber of corporate stock, when sued by the receiver of an insolvent corporation, to interpose a defense available to him had the corporation sued; one line of decisions holding such defense to be permissible on the ground that the receiver stands in the shoes of the corporation and possesses no greater right than the corporation, others denying such right to such defendant on the ground that the receivers represent corporate creditors whose rights are superior to those of the corporation, or on the further ground that by his participation in corporate acts the defendant is estopped to deny his subordination as a stockholder to the right of other creditors who dealt with the corporation without a knowledge of his equity. In that case it was held:

"There can be no doubt of the proposition that·it is the general rule that in the ordinary receivership, which is extended over the affairs of an insolvent corporation, the receiver can only sue in the right of the corporation, and that he is subject to all of the equities which would have been available against it. This rule is· subject to the exception that the receiver so far represents the general creditors that he may avoid transactions in fraud of their rights."

In Smith v. Johnson, 57 Ohio St. 486, 488, 49 N. E. 693, 694, it was declared:

"We suppose that the position of the receiver in this kind of an action does not admit of serious question. While, speaking in general terms, he is a trustee for creditors, and for stockholders as well, in respect to their interests in the property and assets of the corporation, resting upon the fact that they are, or may be, the beneficiaries of the fund which he collects, yet he stands, in a suit against stockholders, as the representative of the corporation, taking the rights of the corporation such as could have been asserted in its name, and on that basis only can he litigate. Smith on Receiverships, § 231. That is, he succeeds to the title and rights of action of the corporation itself, and takes all such rights as the corporation itself originally had, and may enforce them by the same legal remedies. 23 Am. & Eng. Ency. of Law, p. 827; High on Receivers, §§ 315, 316; Winters v. Armstrong (C. C.) 37 Fed. 508; Republic L. Ins. Co. v. Swigert, 135 Ill. 150 [25 N. E. 680, 12 L. R. A. 328]." Hinkley v. Sac. Oil & Pipe Line Co., 132 Iowa, 396, 107 N. W. 629, 119 Am. St. Rep. 564; Chamberlain v. Trogden, 148 N. C. 139, 61 S. E. 628, 16 Ann. Cas. 177; 7 R. C. L. § 214, p. 241.

The case of Stone v. Walker, 77 South. 554, 561 (L. R. A. 1918C, 839),[3] is not in conflict with the conclusions we have announced. The court merely observed:

"The only creditors of the bank shown by the bill are those whose debts were taken over by the new corporation when formed, and which were agreed to be taken over before it was formed. They are shown to be creditors of the old bank, and to have been such before the alleged fraud was committed on appellant. It is not shown that there are any creditors subsequent to the issuance of certificates of shares to appellant. There may or may not be such creditors; it is not necessary that the bill negative their existence, or show that they have been or can be paid in full, and yet allow the relief prayed in the bill. It may also· be true that the claims of creditors of the old corporation are superior to the claims of complainant, or there may or may not be funds sufficient to pay all creditors, including the complainant, if his relation be transformed from that of stockholder to that of creditor, as prayed in his bill; but it is not necessary that the bill should show these facts affirmatively, or negative prior rights of creditors of either class."

There had been a reorganization in the sense of the formation of a new corporation,

---

[3] 201 Ala. 130.

and no disaffirmance of a contract to purchase or subscription for treasury stock in a corporation was the case, as it was in the instant suit.

The pleas aver that, when defendant discovered the fraudulent representations made by the company's agent to induce him to make his subscription for stock in the Empire Life Insurance Company, he promptly repudiated the contract. No lack of vigilance in discovering the fraud was shown to have existed; the contract was executed on May 24, 1914, and its rescission, on discovery of the fraud, took place in January, 1915, before the note was due, though after the affairs of the corporation were placed in the hands of plaintiff, Insurance Commissioner of Georgia.

Appellant urges that the courts of Alabama, under the full faith and credit clause of the Constitution of the United States, give effect to the decree of the Superior Court of Fulton county, Ga., made a part of the complaint, together with the statutes of that state; and that this decree determined it necessary to the protection and payment of creditors of the Empire Life Insurance Company that all subscriptions to the capital stock of the Empire Life Insurance Company be collected by plaintiff insurance commissioner.

If the action is founded upon an executory agreement to purchase treasury stock in a Georgia corporation, has plaintiff insurance commissioner the right to maintain the action against the defense of purchaser? The laws of Georgia, set forth in the complaint, authorize the commissioner of insurance to take possession of the assets of the company and conduct its business; and when the commissioner has done this a final decree will be entered in said cause. The final decree, of necessity, depends upon the facts reported by the insurance commissioner as to the conduct of the business of the insurance company by said official, and shall be to the effect (1) that the company may "resume possession of its property and the conduct of its business," or (2) that liquidation of the business of such company is necessary. In the event of liquidation, the commissioner is vested "with title to all the property, contracts, and rights of action of such company, as of the date of the order so directing him to liquidate." It is noted that in the first instance the insurance commissioner may not deal with the property and business of the company in his own name as commissioner or in the name of the company, but as the court may direct, and is not vested by operation of law with the title to all the property, contracts, and rights of action of such company until the application and order to show cause is heard, and the court "shall order the liquidation of the business of such company." No statute of Georgia is pleaded which authorizes the insurance

commissioner to bring suit in behalf of any creditor or of the corporation until it has been judicially determined that the business of the company is to be liquidated. Until such order was made by the court pursuant to the statute pleaded, the commissioner was only authorized to conduct the business of such company and retain the possession and conduct of such business until, on the application of the commissioner, the Attorney General representing him, the court renders one of the two decrees authorized by the statute, viz. "that the company can properly resume possession of its property and the conduct of its business," or "order the liquidation of the business of such company." Laws of Ga. 1912, p. 119, § 29. This is not shown to have been done by the decree incorporated in the complaint and as a part thereof.

The decree of the court, pleaded in connection with the statute we have adverted to, was to the effect (1) that the insurance commissioner conduct the business of the Empire Life Insurance Company, and to that end he was "authorized and empowered to institute such suits in equity and actions at law for the purpose of enforcing any cause of action existing in favor of the Empire Life Insurance Company on account of subscriptions to the capital stock of said company, or on any other account whatsoever, including the collection of purchase-money notes, mortgages, collateral loans, accounts receivable, notes, and any and every other chose in action"; (2) that such official is authorized to proceed against persons against whom such causes of action exist, who reside within or without the state of Georgia; (3) that such official shall have "all the power to enforce said causes of action which the said Empire Life Insurance Company had, or which might exist in favor of creditors, or in favor of any person at interest in said estate, and that for this purpose the said Empire Life Insurance Company shall be deemed to have assigned and transferred all of said choses in action to the said William A. Wright, as Insurance Commissioner of the State of Georgia." This judgment contains a further recital that it is "necessary for the protection and full payment of the creditors" of said insurance company that the said "causes of action and items of indebtedness, stock subscriptions, mortgages, notes, purchase-money notes, and other choses in action be collected."

In anticipation of defense that may be made to the suit, plaintiff's counsel incorporated in one count of the complaint the statute of Georgia under which the decree of the court purports to have been rendered. Under such statute the commissioner was not authorized to bring suit in behalf of any creditor of the corporation until it had been judicially determined that the business of the company was "to be liquidated." Until such

ascertainment of the necessity for liquidation of the business of the company, the authority of such commissioner was only to conduct the business of the company and retain the possession of its properties subject to the further orders of the Georgia court having jurisdiction of the estate. We may observe that, in the conduct of the corporation's affairs under the decree, the insurance commissioner had the same right as the corporation to sue on executory contracts for unpaid subscriptions for its treasury stock; that is, any lawful defense that defendant nonresident subscriber had against recovery by that corporation was available to him against recovery by the insurance commissioner conducting the corporation's business under direction of the court.

When, on May 24, 1914, defendant contracted to receive and pay for the treasury stock of the Georgia corporation on May 24, 1915, it was not thereafter subject to a greater liability by subsequent decisions of the courts of that state (if such they have), extending liability to subscribers for treasury stock, if the existing laws of Georgia became a part of that contract. Empire Life Ins. Co. v. Brown, 145 Ga. 818, 89 S. E. 1085, rendered September 14, 1916; McKey v. Wright, 147 Ga. 662, 95 S. E. 217, rendered February 18, 1918. Theretofore the Georgia courts, at the instance and on behalf of creditors, had declared and enforced liability on contracts procured by fraud against stockholders, and not against mere subscribers to treasury stock on which no payments had been made, and on which subscriptions no stock had been delivered or action taken as stockholders under such executory contracts. The liability we are considering in the instant appeal is contractual, was entered into before the rendition of the Brown and McKey Cases, and may no more be materially increased or extended by subsequent judicial decision than by subsequent legislation. Great Sou. Fire Proof Hotel Co. v. Jones, 193 U. S. 532, 548, 24 Sup. Ct. 576, 48 L. Ed. 778; Brunswick T. Co. v. Nat. Bank of Baltimore, 192 U. S. 386, 394, 24 Sup. Ct. 314, 48 L. Ed. 491; Burgess v. Seligman, 107 U. S. 20, 33, 34, 2 Sup. Ct. 10, 27 L. Ed. 359; Bernheimer v. Converse, supra, 206 U. S. 530, 27 Sup. Ct. 755, 51 L. Ed. 1163; Moore-Mansfield Const. Co. v. Electrical Installation Co., 234 U. S. 619, 625, 34 Sup. Ct. 941, 58 L. Ed. 1503; Ennis Water Works Co. v. City of Ennis, 233 U. S. 652, 657, 658, 34 Sup. Ct. 767, 58 L. Ed. 1139; Sims v. Edenborn, 242 U. S. 131, 37 Sup. Ct. 36, 61 L. Ed. 199; East Ala. Ry. v. Doe, 114 U. S. 340, 353, 5 Sup. Ct. 869, 29 L. Ed. 136; Gibson v. Lyon, 115 U. S. 439, 446, 6 Sup. Ct. 129, 29 L. Ed. 440; Anderson v. Santa Anna, 116 U. S. 356, 362, 6 Sup. Ct. 413, 29 L. Ed. 633; B. & O. Rd. v. Baugh, 149 U. S. 368, 372, 13 Sup. Ct. 914, 37 L. Ed. 772;

Folson v. Ninety-Six, 159 U. S. 611, 625, 16 Sup. Ct. 174, 40 L. Ed. 278; Stanley County v. Coler, 190 U. S. 437, 444, 23 Sup. Ct. 811, 47 L. Ed. 1126; Kuhn v. Fairmont Coal Co., 215 U. S. 349, 357, 360, 30 Sup. Ct. 140, 54 L. Ed. 228.

Giving full faith and credit to the judgment and statutes of the sister state that are pleaded, and having due regard for defendant's right and liability at the time of the making of the executory contract, and its seasonable rescission for fraud in its execution, finding statement in his pleas, I would affirm the judgment of the circuit court.